STATE OF NORTH CAROLINA v. ALTON LENNON MILLER, JR., GRADY EPPS AND ROBERT HENRY JONES

No. 7212SC511

(Filed 23 August 1972)

1. Criminal Law § 9— accomplice question left to jury — no error

In a prosecution for conspiracy to commit armed robbery, it was proper for the trial court by its instructions to leave the question of whether a witness was an accomplice to the jury since he would be an accomplice only if the offenses charged were in fact committed.

2. Criminal Law § 92— consolidation of cases for trial — no abuse of discretion

No abuse of discretion was shown in a conspiracy prosecution in the lower court's order consolidating defendants' cases for trial.

3. Conspiracy § 6— sufficiency of evidence to withstand motion for nonsuit

State's evidence was sufficient to withstand defendant's motion for nonsuit in a conspiracy prosecution where it tended to show that defendant advised his co-conspirators as to the best way to complete the armed robbery; that defendant unilaterally announced how the proceeds to be obtained from the robbery would be divided; and that defendant accepted his share of proceeds after the robbery.

4. Conspiracy § 5— acts and declarations of conspirator — competency

Where sufficient evidence of a conspiracy is introduced, acts and declarations of one conspirator are competent against the other.

State v. Miller

**5. Conspiracy § 7— erroneous jury instructions — no prejudice**

Defendant cannot complain of errors in the judge's charge to the jury which placed a heavier burden of proof upon the State and in no way prejudiced him.

**6. Constitutional Law §§ 20, 30— denial of free transcript to indigent — alternative devices available**

The trial court did not err in refusing defendant a free transcript of his first trial which resulted in a mistrial where alternative devices that would fulfill the same functions as a transcript were available to defendant.

**7. Criminal Law § 66— in-court identification — competency**

The trial court's findings and conclusions that an in-court identification of defendant was not so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification were fully supported by the evidence where such evidence tended to show that the witness observed defendant for some fifteen minutes at the time of the robbery and then observed him for the second time and identified him when he appeared in the courtroom.

**8. Criminal Law § 122— further jury instructions — no coercion or intimation of opinion**

Additional instructions given by the court after initial retirement of the jury did not constitute error where the court's language in no way tended to coerce or intimate an opinion as to what the verdict should be.

**9. Criminal Law § 9— aiders and abettors**

One who is present, aiding and abetting in a crime actually perpetrated by another, is equally guilty with the actual perpetrator.

**10. Criminal Law § 73— hearsay testimony**

If a statement is offered for any purpose other than that of proving the truth of the matter stated, it is not objectionable as hearsay.

**11. Criminal Law § 169— objection to testimony — similar testimony admitted without objection**

Where defendant did not object or move to strike testimony of one witness concerning a telephone call, he was in no position to object when identical testimony was subsequently given by another witness.

**12. Robbery § 1— armed robbery — two victims — two offenses**

The court's instruction that "armed robbery of one person followed by the armed robbery of another would constitute two separate offenses, although they occurred in the same building or the same dwelling" was an accurate statement of the law and applicable to the facts in a prosecution for two separate offenses of armed robbery, one committed against a husband and the other against his wife.

APPEAL by defendants from *Clark, Judge,* 21 February 1972 Session of Superior Court held in CUMBERLAND County.

Defendants, along with one Charles Allan McElwin, were charged in a single bill of indictment with conspiracy to commit the armed robbery of Charles Glaser and Peggy Glaser.

Defendants Epps and Jones were also charged in separate bills of indictment with two separate offenses of armed robbery; to wit, the armed robbery of Charles Glaser and the armed robbery of Peggy Glaser.

The cases were consolidated for trial.

Rufus L. Chalmers testified for the State in substance as follows:

On 23 September 1971 Chalmers and defendant Epps had a conversation in a Fayetteville poolroom with Lafayette Smith and Charles McElwin. As a result of this conversation, Chalmers went to the Overseas Wig Warehouse the next day where he was introduced to defendant Miller. Chalmers, Miller, Smith and McElwin went into a back room and Miller told them of several people who could be robbed. He mentioned a Mr. Glaser who owned a military store, usually carried large amounts of money, and owned a ring worth from $8,000.00 to $11,000.00. Miller stated that Glaser carried a weapon in a newspaper and that "the best way this job could be done was to get into the Glaser home and be waiting for him either when he got in from work or be waiting outside for him when he came in from the business establishment." He also advised where Glaser lived and the approximate time he usually left his work. Miller stated that half the money would be split between him and McElwin and the other half would go to Chalmers and the people who helped him. The jewelry would be fenced by Miller and he would "bring half of the proceeds back."

Later, on that same day, Chalmers met Epps and Jones and told them Glaser was to be robbed. "They both agreed to go along with the job." Jones, Epps and Chalmers made several trips by the Glaser home and discussed various ways to successfully get into the house.

On the evening of 24 October 1971, these men met with McElwin. It was agreed that McElwin would call the Glaser home at 10:50 p.m. and say that he was from the sheriff's department and that Glaser's place of business had been broken into. Jones, Epps and Chalmers would wait outside the Glaser

State v. Miller

home, accost Mr. and Mrs. Glaser as they left their home to go check on their business, and rob them.

In accordance with the plan, the three men went to the Glaser home. They wore nylon stockings over their heads. Epps and Chalmers carried weapons. When Mr. and Mrs. Glaser came out of their house, the men approached them with their weapons and ordered them back into the home. A diamond ring and approximately $1700.00 in cash were taken from the person of Mr. Glaser and he was then tied up in the living room. Mrs. Glaser was taken to a bedroom where a purse containing $120.00 in cash and some jewelry was taken from her. Other items, including a police special pistol and a .38 snub nose pistol were removed from the home.

Jones, Epps and Chalmers left the scene of the robbery and went to Lafayette Smith's house where they met McElwin and Miller and divided the money and other items. Epps kept the .38 caliber pistol. He later told Chalmers that he traded the pistol with his brother. Miller took a portion of the proceeds.

Chalmers was questioned about the robbery by a police lieutenant on 12 November 1971. He promised to give a statement about the robbery and to testify for the State in exchange for immunity from prosecution. The solictior was summoned and expressly agreed to grant Chalmers immunity in consideration for his testimony and cooperation.

Mrs. Glaser pointed out Epps in court as one of the three men who robbed her on 24 October 1971. Her testimony, and that of her husband, tended to corroborate the testimony of Chalmers with respect to events that transpired while the men were at the Glaser home on that date. A pistol and various other items which had been found in the possession of Chalmers were identified by Mr. Glaser as having been removed from his home on 24 October 1971. He also identified a .38 caliber pistol which had been recovered from a car driven by Charles Epps. The pistol was found in the car during a search following the arrest of Charles Epps for driving while under the influence of an intoxicant.

The jury returned verdicts finding Miller guilty of the conspiracy charge and Epps and Jones guilty of each charge of armed robbery. Epps and Jones were acquitted on the charge of conspiracy.

All defendants appeal from judgments imposing sentences of imprisonment.

*Attorney General Morgan by Staff Attorney Evans for the State.*

*Barrington, Smith & Jones by Carl A. Barrington, Jr., for defendant appellant Alton Lennon Miller, Jr.*

*Neill Fleishman, Assistant Public Defender, Twelfth Judicial District, for defendant appellant Grady Epps.*

*Barrington, Smith & Jones by Carl A. Barrington, Jr., for defendant appellant Robert Henry Jones.*

GRAHAM, Judge.

[1] All three defendants challenge the court's charge with respect to the testimony of the witness Chalmers. The court charged in substance that the uncontradicted evidence tended to show that the witness Chalmers was an accomplice and that he had been granted immunity by the State; that an accomplice or one who has been granted immunity from prosecution is considered to have an interest in the outcome of the case, *and that if the jury found from the evidence* that the witness was an accomplice, or had been granted immunity from prosecution, or both, then it would be the jury's duty to "take these things into consideration and examine every part of his testimony with the greatest care and caution, and closely scrutinize it in the light of his interest and his motives."

Defendants argue that the court erred in these instructions by permitting the jury to decide whether Chalmers was an accomplice and whether he had been granted immunity. They contend the evidence conclusively established both of these facts. We see no prejudicial error. "An accomplice is a person who knowingly, voluntarily, and with common intent with the principal offender unites with him in the commission of the crime charged. . . . " 2 Strong, N.C. Index 2d, Criminal Law, § 9, p. 494. Chalmers was an accomplice only if the offenses charged were in fact committed. Thus, we think it proper for the court to leave the question of whether he was an accomplice to the jury.

The court correctly defined accomplice and on two occasions reminded the jury what the uncontradicted evidence

tended to show with respect to Chalmers' status. It is interesting to note that requested instructions, tendered by one of the defendants, also leave to the jury the question of whether Chalmers had been granted immunity. The other defendants did not request a charge on this phase of the case. Generally, instructions to scrutinize the testimony of an alleged accomplice are not required in the absence of a request. 3 Strong, N.C. Index 2d, Criminal Law, § 117, p. 26.

[2] Defendants Epps and Jones assign as error the court's order consolidating the cases for trial. They concede that this is a discretionary matter. 2 Strong, N.C. Index 2d, Criminal Law, § 92, p. 624. All the cases arose out of one transaction. No abuse of discretion in ordering their consolidation has been shown and the assignment of error is overruled.

Since defendants make no other common assignments of error, we consider the remainder of their contentions separately.

### Appeal of Miller

Miller contends the State's evidence was insufficient to show that he entered an agreement with any of those named in the conspiracy indictment and that nonsuit should have been entered as to him.

We note that at the outset that Miller does not contend that since his codefendants were acquitted of the conspiracy charge he likewise is entitled to an acquittal. "One person alone may not be convicted of criminal conspiracy, and when all of the alleged conspirators are acquitted except one, the one convicted is entitled to his discharge." *State v. Littlejohn,* 264 N.C. 571, 574, 142 S.E. 2d 132, 134. Here, however, one of the alleged conspirators, McElwin, has not yet been tried. The conviction of an alleged conspirator is not necessarily vitiated because of the possible later acquittal of another coconspirator who has not yet been tried. 16 Am. Jur. 2d, Conspiracy, § 33, p. 144.

[3] We find the evidence sufficient to support Miller's conviction of conspiracy. A criminal conspiracy is the unlawful concurrence of two or more persons in a scheme or agreement to do an unlawful act or to do a lawful act unlawfully. *State v. Butler,* 269 N.C. 733, 153 S.E. 2d 477. Miller argues that his participation, as shown by the evidence, was limited to fur-

nishing information to the alleged co-conspirators about a potentially favorable robbery subject. The evidence shows much more than this. Miller advised the others as to "the best way this job could be done." At the first meeting in the wig warehouse, he unilaterally announced how the proceeds to be obtained from the robbery would be divided and, after the robbery, he accepted a share of the proceeds.

Direct proof of a charge of conspiracy is rarely obtainable. " 'It may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy.' " *State v. Horton,* 275 N.C. 651, 660, 170 S.E. 2d 466, 472. Here, not only was there plenary "indirect evidence," there was direct evidence that an agreement was entered to rob Mr. and Mrs. Glaser and that Miller was a party to the agreement. In fact, Chalmers testified expressly that when he left the wig warehouse on the first occasion, "[t]here was an agreement to do the Glaser job, just there wasn't an agreement on how."

[4] Miller assigns as error the admission, over his objection, of testimony by Chalmers as to statements made by Chalmers outside Miller's presence. One exception is to Chalmers' testimony that "I told Epps the gentleman in question that was to be robbed. . . . " This statement was made after Chalmers, Miller and others had agreed "to do the Glaser job." In response to the statement, Epps agreed "to go along with the job." It is obvious that this conversation was in the furtherance of the conspiracy. The other statement Miller complains of is McElwin's statement that "maybe he could call and say that he was the sheriff." This statement was made while details of the robbery were being discussed. It was also made in the furtherance of the conspiracy. Where sufficient evidence of a conspiracy is introduced, acts and declarations of one conspirator are competent against the others. *State v. Littlejohn, supra.* This assignment of error is overruled.

[5] Miller assigns as error portions of the court's instructions to the jury, contending that the jury was improperly permitted to find him guilty if they found that he conspired with Chalmers. Chalmers is not named in the bill of indictment as a conspirator, nor does the indictment allege that Miller conspired with persons other than those named therein. In the challenged

State v. Miller

portions of the instructions the court charged that to convict Miller of conspiracy, the jury must find from the evidence and beyond a reasonable doubt that "defendant Alton Miller, Jr., Charles McElwin *and* Rufus Chalmers did agree or concur in the plan to rob with firearms. . . . " (Emphasis added.) Under this instruction, in order to convict Miller it was necessary for the jury to find, not only that Miller conspired with Chalmers, but that he also conspired with McElwin, who is named in the indictment as a co-conspirator. Thus, the charge placed a heavier burden on the State than was necessary and was in no way prejudicial to Miller.

Finally, Miller contends that the court should have granted his motion to strike Chalmers' testimony that he and Miller discussed other robberies. This contention has no merit. The evidence indicates that the men discussed various potential robbery victims, and the agreement on Glaser as the one to be robbed arose out of this discussion.

## Appeal of Epps

[6] The first trial of this case resulted in a mistrial. Before the case came on for a second trial, the court entered an order denying Epps' request that he be furnished a free transcript of the first trial. Epps, who is conceded to be an indigent, appeals from the order. We find that alternative devices that would fulfill the same functions as a transcript were available to Epps and affirm the order on this ground. *Britt v. North Carolina,* 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed. 2d 400.

[7] Epps next attacks the court's finding and conclusion that his identification by Mrs. Glaser in the courtroom before the trial was not so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification.

It was stipulated that *voir dire* evidence from the first trial could be used by the court as a basis for determining the admissibility of Mrs. Glaser's identification of Epps.

Mrs. Glaser testified on *voir dire:* "I did not identify Mr. Epps during any lineup and have only seen Mr. Epps during the robbery and yesterday as he entered this courtroom. This was before court opened and I was sitting out there and different people were coming in and out. As he entered, I immediately said 'That is the third man who came into our

house the night of the robbery.'" On cross-examination Mrs. Glaser stated that to her knowledge she had not seen Epps, except on the night of the robbery and when he walked into the courtroom. She further stated: "I have seen someone dressed in a uniform and I suppose it was him (referring to the courtroom bailiff). I don't recall whether he was the one who I saw with Mr. Epps when I saw him come to the courtroom or not. As soon as my eye hit Epps, I knew it was him. At that point, I didn't see anybody and I was not aware of anything except him. I knew this was the third man who entered our house and the man who went through my pocketbook during the robbery." This evidence fully and convincingly supports the court's findings and conclusions. *Cf. State v. McPherson,* 276 N.C. 482, 172 S.E. 2d 50.

The court further found, based upon competent evidence, that Mrs. Glaser had the opportunity to observe Epps for a period of fifteen minutes at the scene of the alleged robbery. The lighting conditions in the home were good and Epps stood a distance of about five feet from the witness for a period of about five minutes while he examined the contents of her purse. She was looking directly at him during this period and, although he was wearing a stocking over his face, his facial features were not distorted or altered, except for his nose. The main thrust of defendant's argument is that "the facts show an extremely unlikely identification." We disagree. Moreover, any lack of positiveness as to the identification went to the weight and not to the admissibility of Mrs. Glaser's testimony. *State v. Bridges,* 266 N.C. 354, 146 S.E. 2d 107.

[8] Epps assigns as error additional instructions given by the court after initial retirement of the jury. He concedes that the form of the instructions given have been approved in this State; however, he argues that the instructions were prejudicial in this case because they were given before there was an indication that the jury was deadlocked.

Without conceding that the instructions would have been error, even if given as a part of the initial charge, we note that the record does not show how long the jury deliberated before the additional instructions were given. It may well be that the court was justified in concluding that the jury was deadlocked and in giving supplementary instructions appropriate under such circumstances. The important fact, however, is that the

court's language in no way tended to coerce or intimate an opinion as to what the verdict should be. See *State v. McVay* and *State v. Simmons,* 279 N.C. 428, 183 S.E. 2d 652. This assignment of error is overruled.

## Appeal of Jones

[9] Jones contends the armed robbery case should have been nonsuited as to him. He argues that although the evidence shows he was at the scene of the robbery, it does not show that he actually participated. This contention is completely without merit. One who is present, aiding and abetting in a crime actually perpetrated by another, is equally guilty with the actual perpetrator. *State v. Garnett,* 4 N.C. App. 367, 167 S.E. 2d 63. Moreover, the evidence shows that Jones actually participated. There was testimony that he went to the scene wearing a stocking over his head, forced Mrs. Glaser back into the house where she was robbed, and tied up Mr. Glaser with a coat hanger. In the face of this evidence it is difficult to see how Jones can seriously argue that he was but an innocent bystander.

[10, 11] Jones argues that the court should have excluded as hearsay testimony by Mr. Glaser that on the night of the robbery he received a telephone call that his place of business had been broken into. This evidence was offered to explain why Mr. and Mrs. Glaser were leaving their home when accosted by Jones and his companions. It was not offered for the purpose of proving the truth of what the caller stated. If a statement is offered for any purpose other than that of proving the truth of the matter stated, it is not objectionable as hearsay. Stansbury, N.C. Evidence 2d, § 141, p. 343. Moreover, identical testimony concerning the telephone call was elicited by Jones on cross-examination of Mrs. Glaser, a previous witness. No objection or motion to strike this testimony was made. Consequently, Jones was not in position to object when Mr. Glaser subsequently testified to the same matter. Stansbury, N.C. Evidence 2d, § 30, p. 56.

[12] Jones' remaining assignment of error is to the court's instruction that "the armed robbery of one person followed by the armed robbery of another would constitute two separate offenses, although they occurred in the same building or the same dwelling." This was an accurate statement of law and

---

Rea v. Casualty Co.

---

applicable to the facts of this case. See *State v. Harris*, 8 N.C. App. 653, 175 S.E. 2d 334.

We have carefully reviewed each of the assignments of error brought forward by all of the appellants, including some which we deem it unnecessary to discuss. In our opinion appellants had a fair trial free from prejudicial error.

No error.

Judges MORRIS and VAUGHN concur.