## CHRISTOPHER COLUMBUS KELLY *v.* STATE OF MARYLAND

[No. 253, September Term, 1972.]

*Decided January 5, 1973.*

534

The cause was argued before MORTON, GILBERT, MENCHINE and DAVIDSON, JJ.

*Michael E. Kaminkow* for appellant.

*David B. Allen, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Michael Libowitz, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

---

* Note: *Certiorari* granted, Court of Appeals of Maryland, April 3, 1973.

GILBERT, J., delivered the opinion of the Court.

In this appeal from the Criminal Court of Baltimore by Christopher Columbus Kelly, we are called upon to explore the subject of an *Allen* type charge [1] given to the jury during the trial judge's initial advisory instructions.

Appellant was convicted of the crime of manslaughter [2] by a jury presided over by Judge Solomon Liss, and was sentenced to a term of ten years imprisonment. Here, the appellant attacks the judgment of conviction in a trifurcated manner, namely: (1) the prosecutorial demeanor of the trial judge; (2) the *Allen* type charge embodied in the original advisory jury instructions, and (3) the sufficiency of the evidence.

The evidence disclosed that John D. Cook was shot and killed on the night of August 24, 1971. The sole witness to the slaying, Thelma Jean Banks, testified that she and Cook were in bed together at approximately 12:25 a.m. when the door bell rang. At Miss Banks's request, Cook went to see who was at the door. Shortly thereafter the appellant Kelly stuck his head through the bedroom doorway and said to Miss Banks, "Oh, you're in bed, huh?" Miss Banks made no response to the appellant, although she admitted that she had been "seeing" him on occasion. Appellant withdrew and went back into the hallway leading to the door. Miss Banks then heard the appellant direct an exclamation to the decedent, followed by three shots. The decedent "stumbled" back to the bedroom where he collapsed and expired. Swab samples were taken of the hands of the appellant and Miss Banks in order for a neutron activation analysis to be made by the Alcohol, Tobacco, and Firearms Division of the United States Treasury Department. The test was negative as to Miss Banks, but posi-

---

1. The term *"Allen charge"* is derived from *Allen v. United States,* 164 U. S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896). The charge itself was taken from *Commonwealth v. Tuey,* 8 Cush. 1 (Mass. 1851), and approved by the Supreme Court in *Allen.*

2. The indictment charged "that [appellant] * * * feloniously, wilfully and deliberately premeditated [sic] malice aforethought did kill and murder one John Dennis Cook."

tive as to the appellant.[3] Appellant endeavored to explain the presence of the barium and antimony on his hands through his testimony that he was employed as a welder and that as such he frequently worked with materials that were composed in part of both barium and antimony. He admitted, however, that he wore gloves while he was welding. The gloves, which had also been analyzed, contained no traces of barium and insignificant amounts of antimony. Appellant introduced three alibi witnesses, all of whom stated that the appellant was with them on the night of the shooting from approximately 9:00 p.m. August 23, 1971 until 3:30 a.m. August 24, 1971.

At the conclusion of the testimony, Judge Liss granted the appellant's motion for judgment of acquittal as to first degree murder and submitted the matter to the jury with instructions as to the remaining possible verdicts.

At oral argument before this Court, counsel for the appellant focused the thrust of his attack on the *Allen* charge. We shall, therefore, consider that issue first.

During the course of Judge Liss's advisory instructions to the jury, he said:

> "May I say to you when you retire to consider this case it may well be that there will be a difference of opinion between you. If that is so, that is not something to be concerned about because obviously when there are three days of testimony it's not unlikely that there may be some difference. What I ask you to do is for each of you to consult with each other, to consider the testimony as it has been given. In those instances where you cannot conscientiously agree with the majority, then you should maintain your own position. On the other hand you should not out of stubbornness refuse to alter your position, whether it is for innocence

3. The test revealed "[b]arium and antimony, indicative of gunshot residue, were present on the swabs of the top and palm of the right hand and the left palm of C. Kelly."

or guilt merely because you are not willing to listen to the arguments of the other jurors. There must be some give and take between you. There must be some understanding between you and it is up to you to determine for yourselves whether or not you can conscientiously agree as to what the verdict should be in this case. It makes no difference whether you originally start out in the minority or the majority. In every case you are the final arbiters of your own conscience and you must decide whether or not you can agree to reach a verdict in this case."

Appellant's counsel excepted to the *Allen* type charge on the ground that it was improper to give such a charge prior to any jury deliberation. Appellant's major attack in this Court falls on the use of the words "majority" and "minority." Appellant states that his "right to a fair and impartial jury trial should not be taken away by a Trial Judge who at the time of his charge to the jury before deliberation indicates to the jurors that there will be majority and minority opinions and that the minority should be swayed by the majority." The charge ruled on in *Allen v. United States,* 164 U. S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896), included reference to a majority and a minority. Appellant, to support his argument, draws heavily upon an article entitled *The Allen Charge Dilemma,* 10 Am. Crim. L. Rev. 637 (1972), wherein it is suggested, "Allen is dead," [4] its precedential value dubious and that it should be jettisoned in favor of the ABA *Minimum Standards for Criminal Justice,* "Standards Relating to Trial by Jury," § 5.4, Approved Draft, 1968. The recommendation of the American Bar Association is:

4. From a comment by Mr. Justice Clark. The entire quotation reads:
"Nor do we circulate the 'Allen charge' to the new judges as I used to do when heading up the criminal division of the Department of Justice. Allen is dead and we do not believe in dead law." Clark, *Progress of Project on Effective Justice—a Report on the Joint Committee,* 47 J. Am. Jud. Soc'y 88, 90 (1963).

"Length of deliberations; deadlocked jury

(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

(i) that in order to return a verdict, each juror must agree thereto;

(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement."

One of the difficulties that has arisen since the Supreme Court approved the jury charge in *Allen v. United States, supra,* is that divers courts and judges have endeavored

to "improve" upon the *Allen* charge or to add their personal touch to it. Much appellate litigation has resulted from the attempted improvement on *Allen*.[5]

> "Since the constitutionality of a properly framed *Allen* charge uniformly has been upheld by the courts, most appeals have been based upon the trial judge's additions to or deletions from the approved instruction." 25 Vand. L. Rev. 246, 251 (1972).

Supposedly, the American Bar Association's model instruction will preclude the utilization of the personal touch with the *Allen* charge. We fail to comprehend the reasoning behind such a belief. As Judge Robb notes in his dissent in *United States v. Thomas*,[6] 449 F. 2d 1177 (D.C. Cir. 1971) at 1192:

> "* * * [I]f * * * district court judges have strayed from the litany approved by the Supreme Court I think it reasonable to assume that they may also deviate from the formula prescribed by the Bar Association. If they hear not the Supreme Court and this court neither will they be persuaded by the Bar Association; and, contrary to the hopes of the majority, the 'aberrations of the charge' which disturb the majority will still occur." [7]

We observe little support for Mr. Justice Clark's assertion that "Allen is dead." On the contrary, *Allen* is alive and well in many jurisdictions [8] including Mary-

---

5. Various appellate courts have also added their "personal touch" by characterizing the *Allen* charge in different ways. *See Green v. United States,* 309 F. 2d 852 (5th Cir. 1962)—the "dynamite charge"; *Leech v. People,* 112 Colo. 120, 146 P. 2d 346 (1947) —the "third degree instruction"; *State v. Nelson,* 63 N. M. 428, 321 P. 2d 202 (1958)—the "shotgun instruction"; *Huffman v. United States,* 297 F. 2d 754 (5th Cir. 1962), dissenting opinion by Judge Brown—the "nitroglycerin charge."

6. *United States v. Thomas* was an *en banc* hearing and resulted in a five to four decision.

7. For an apparent differing view, *see* 22 Syra. L. Rev. at 1173.

8. *See, inter alia: United States v. Flannery,* 451 F. 2d 880 (1st

land[9] and the Fourth Circuit.[10] Although some states have suggested the use of the ABA standards,[11] only a minority of jurisdictions have totally disallowed *Allen*.[12]

That *Allen* was decided in 1896 does not make it lacking in precedential value. We note that the Supreme Court again approved *Allen* in *Burton v. United States*, 196 U. S. 283, 25 S. Ct. 243, 49 L. Ed. 482 (1905), and in a per curiam opinion, *Lias v. United States*, 284 U. S. 584, 52 S. Ct. 128, 76 L. Ed. 505 (1931). Additionally, the Supreme Court has consistently denied *certiorari* in other cases which have presented *Allen* charge questions.[13]

---

Cir. 1971); *Meyers v. United States*, 446 F. 2d 37 (2nd Cir. 1971); *United States v. Bailey*, 468 F. 2d 652 [12 Cr. L. 2038] (5th Cir. 1972); *United States v. Harris*, 391 F. 2d 348 (6th Cir. 1968); *Sullivan v. United States*, 414 F. 2d 714 (9th Cir. 1969); *Goff v. United States*, 446 F. 2d 623 (10th Cir. 1971); *Poindexter v. Commonwealth*, 213 Va. 212, 191 S.E.2d 200 (1972); *State v. Miller*, 15 N. C. App. 610, 190 S.E.2d 722 (1972); *Commonwealth v. Brunelle*, 277 N.E.2d 826 (Mass. 1972); *State v. Wright*, 113 N. J. Super. 79, 272 A. 2d 758 (1971); *Speights v. State*, 244 So. 2d 530 (Fla. App. 1971); *People v. Coles*, 28 Mich. App. 300, 184 N.W.2d 214 (1970); *State v. Nelson*, 428 S.W.2d 518 (Mo. 1968); *Brannon v. Commonwealth*, 400 S.W.2d 680 (Ky. 1966).

9. *See Miller v. State*, 10 Md. App. 157, 268 A. 2d 596 (1970).

10. *See United States v. Rogers*, 289 F. 2d 433 (4th Cir. 1961).

11. *See, inter alia: State v. Champagne*, 198 N.W.2d 218 (N.D. 1972); *State v. Heald*, 292 A. 2d 200 (Me. 1972); *State v. Brown*, 94 Idaho 352, 487 P. 2d 946 (1971); *State v. Minis*, 80 N. M. 269, 454 P. 2d 355 (1969).

12. *See United States v. Thomas*, 449 F. 2d 1177 (D.C. Cir. 1971); *United States v. Fioravanti*, 412 F. 2d 407 (3rd Cir. 1969); *Brandom v. United States*, 431 F. 2d 1391 (7th Cir. 1970); *Azbill v. State*, 495 P. 2d 1064 (Nev. 1972); *Commonwealth v. Spencer*, 442 Pa. 328, 275 A. 2d 299 (1971); *Fields v. State*, 487 P. 2d 831 (Alas. 1971); *State v. Marsh*, 490 P. 2d 491 (Or. 1971); *Taylor v. People*, 490 P. 2d 292 (Colo. 1971); *People v. Mills*, 131 Ill. App. 2d 693, 268 N.E.2d 571 (1971); *State v. Ferguson*, 175 N.W.2d 57 (S.D. 1970); *State v. Randall*, 137 Mont. 534, 353 P. 2d 1054 (1960); *State v. Thomas*, 86 Ariz. 161, 342 P. 2d 197 (1959).

13. *See, inter alia: Hale v. United States*, 435 F. 2d 737 (5th Cir. 1970), *cert. denied* 402 U. S. 976, 91 S. Ct. 1680 (1971); *United States v. Hynes*, 424 F. 2d 754 (2nd Cir. 1970), *cert. denied* 399 U. S. 933, 90 S. Ct. 2270 (1970); *United States v. Brown*, 411 F. 2d 930 (7th Cir. 1969), *cert. denied* 396 U. S. 1017, 90 S. Ct. 578 (1970); *Fullwood v. United States*, 369 F. 2d 960 (D.C. Cir. 1966), *cert. denied* 387 U. S. 934, 87 S. Ct. 2058 (1967); *Burrup v. United States*, 371 F. 2d 556 (10th Cir. 1967), *cert. denied* 386 U. S. 1034, 87 S. Ct. 1485 (1967); *United States v. Kenner*, 354 F. 2d 780 (2nd Cir. 1965), *cert. denied* 383 U. S. 958, 86 S. Ct. 1223 (1966); *Robinson v. United States*, 345 F. 2d 1007 (10th Cir. 1965), *cert. denied* 382 U. S. 839, 86 S. Ct. 87 (1965); *State v. Watson*, 386 S.W.2d 24 (Mo. 1964), *cert. denied* 381 U. S. 275,

There is a growing belief that the present Supreme Court would reject *Allen*. Am. Crim. L. Rev., *supra,* at 665; *Thaggard v. United States,* 354 F. 2d 735, 739 (5th Cir. 1965) (Coleman, J. concurring), *cert. denied* 383 U. S. 958, 86 S. Ct. 1222 (1966). We do not share that belief, and we shall continue to follow *Allen* until such time as the Supreme Court of the United States or the Court of Appeals of Maryland says that it is improper to do so. We so hold, not because of any misguided concept of stare decisis, but because we believe in the fundamental soundness of the *Allen* charge.

This Court, speaking on the subject of the *Allen* charge, said in *Fletcher v. State,* 8 Md. App. 153, 155-156, 258 A. 2d 781 (1969) :

> "The ultimate test, however, is whether the wording of the charge and the time, circumstances and conditions under which it is given would threaten or tend to coerce the jury into reaching a verdict which is contrary to any individual juror's free will and judgment. Otherwise stated, whether the giving of the instruction constitutes reversible error in a given case depends not only upon the language used but upon the conditions and the attendant circumstances under which the instruction is given. The question to be determined is whether resort to the instruction forced or helped to force an agreement which would not otherwise have been reached except for the intimidating or coercive effect of the charge upon some jurors or whether it merely initiated a new train of real deliberation which ended the disagreement and enabled each juror conscientiously and freely to subscribe to the unanimous verdict."

*See also Miller v. State,* 10 Md. App. 157, 268 A. 2d 596

85 S. Ct. 1458 (1965); *State v. Williams,* 39 N. J. 471, 189 A. 2d 193 (1963), *cert. denied* 374 U. S. 855, 83 S. Ct. 1924 (1963); *United States v. Barnhill,* 305 F. 2d 164 (6th Cir. 1962), *cert. denied* 371 U. S. 865, 83 S. Ct. 126 (1962).

(1970) ; *Lang v. State,* 6 Md. App. 128, 250 A. 2d 276 (1969), *cert. denied* 396 U. S. 971, 90 S. Ct. 457 (1969) ; *Plumley v. State,* 4 Md. App. 671, 245 A. 2d 111 (1968), *cert. denied* 395 U. S. 960, 89 S. Ct. 2102 (1969) ; *Stewart v. State,* 4 Md. App. 565, 244 A. 2d 452 (1968).

In 100 A.L.R.2d at 213, 215, it is said:

> "§ 9. Instructions proper.
>
> It has been held that the trial court in a criminal prosecution may properly instruct the jury, as part of its original charge, to the effect that while the verdict must represent each juror's opinion, if a majority of the jurors differ from a minority, the minority, in view of such difference, should review their conclusions, or should consider whether their opinion might be wrong, since not concurred in by the majority." (Plethora of cases therein cited omitted).

* * *

> "§ 10 b. Instructions improper where juror's duty to act on own judgment is not sufficiently stressed.
>
> The giving of instructions, as part of the original charge to the jury in a criminal case, to the effect that while each juror should adhere to his conscientious convictions, if a majority view develops during the jury's deliberation, the jurors in the minority should view their position with distrust and consider whether they might be wrong, has been held to be improper where the instructions are not adequately safeguarded or conditioned by sufficient reference to the duty of each juror to ultimately base his judgment on his own convictions."

The instruction given by Judge Liss, as hereinabove quoted, was more than ample to remind each juror of his duty not to relinquish his position, be it a majority or a minority view, and of his duty to vote in accord

with his own conscientiously held conviction. We think the instruction given by Judge Liss to have been a fair one which did not threaten or coerce the jury into reaching a verdict that was contrary to any individual juror's free will.

There is nothing magic or sacrosanct in the American Bar Association's recommended charge that would require us, as appellant suggests, to hold that any deviation from it is reversible error.

We have carefully examined Judge Liss's above quoted advisory instruction which, as we have stated, was given to the jury prior to the time that they retired to consider the verdict in the instant case. We think Judge Liss's instruction to be a partial utilization of *Allen* and of the ABA instruction. To grant the quoted instruction prior to the time that the jury retires is a practical method of explaining the essential part of *Allen* without unduly emphasizing the majority-minority aspects of *Allen*. We find nothing in the instruction that is violative of *Allen*, nor of appellant's constitutional right to a fair and impartial trial. We approve the charge employed by Judge Liss. In so doing, we caution that a deviation from the quoted charge in an effort to add a "personal touch" or make "an improvement" might lead to extensive appellate review such as has surrounded *Allen*.

Appellant next argues that Judge Liss asked "unsolicited questions and * * * [made] unsolicited comments, that were not meant to clarify the issues, but to indicate his prejudice against the appellant, thereby assuming a position as advocate for the prosecution." Appellant states that "[t]here are two specific instances of which [he] complains."

The first of these errors appellant sees as occurring was when, during the course of Miss Banks's testimony, the trial judge asked her, "Did you afterwards tell the police that Mr. Kelly had shot [the deceased]?" The witness responded, "Yes, before we went to take, [sic] take me to take the lie detector test I told Detective Joseph Mann and Detective Peacock." A motion for mistrial

was denied. However, Judge Liss admonished the jury that Miss Banks's statement relative to the lie detector test was "of no evidentiary value in this case," and that they were "not to consider it in determining whether or not the witness's statement as to what happened is credible or not credible." The trial judge continued, "You are not to speculate as to what the lie detector test revealed in any event * * *. You are not to consider at all the question of what if anything was revealed in the lie detector test." We find no basis for appellant's argument that Judge Liss's question to Miss Banks was designed to elicit from her the fact that she had taken a lie detector test. Her unsolicited response was, at most, inadvertent. Moreover, the court promptly instructed the jury to disregard any reference to a lie detector test and clearly instructed them that they were not to speculate about it. The decision whether *vel non* to grant a motion for a mistrial is within the sound discretion of the trial judge. *James v. State,* 14 Md. App. 689, 288 A. 2d 644 (1972); *Killie v. State,* 14 Md. App. 465, 287 A. 2d 310 (1972); *Parker v. State,* 7 Md. App. 167, 254 A. 2d 381 (1969); *Matthews v. State,* 3 Md. App. 555, 240 A. 2d 325 (1968). We perceive no abuse of discretion by Judge Liss in asking the question or denying the motion for mistrial.

Appellant charges that the second instance of error occurred when the chemist, Richard Brunell of the National Office Laboratory of Alcohol, Tobacco, and Firearms Division of the United States Treasury Department, was being questioned as to his professional qualifications. Before this testimony had seemingly been concluded, the trial judge said, "I think we have gone far enough * * *." Judge Liss then said, "Mr. Brunell has been qualified as a chemist I am certain. By this time if the jury is not impressed they will never be." An unrecorded bench conference ensued. We are unable to conclude from the silent record that a motion for mistrial was made. We do note, however, that prior to the State's questioning of Mr. Brunell relative to his qualifications,

counsel for the appellant was willing to stipulate that the chemist was in fact an expert on neutron activation tests, and no cross-examination was offered which was designed to show anything to the contrary. The agreement by defense counsel as to the chemist's qualifications more than surmounts any alleged error regarding these qualifications on the part of Judge Liss.

Appellant additionally directs our attention to questions asked by the trial court during the testimony which, appellant alleges, establishes a pattern of prosecutorial demeanor. We have read the entire transcript, and most particularly the remarks of Judge Liss to which we have been directed, and we conclude that the appellant's assertion is totally devoid of merit. It appears to us that Judge Liss asked questions designed to clarify evidence. Furthermore, the appellant did not object to any of the alleged improper questions or comments and therefore the matter is not properly before us. *Plumley v. State, supra,* at 680; Rule 1085.

Lastly, appellant contends that the evidence was insufficient to sustain the conviction. The test for the sufficiency of the evidence in a jury trial is whether the evidence, if believed, either shows directly, circumstantially, or supports a rational inference of, the facts to be proved from which the jury could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt. *Carter v. State,* 15 Md. App. 242, 289 A. 2d 877 (1972); *Conway v. State,* 15 Md. App. 198, 289 A. 2d 862 (1972); *Young v. State,* 14 Md. App. 538, 288 A. 2d 198 (1972); *King v. State,* 14 Md. App. 385, 287 A. 2d 52 (1972); *Metz v. State,* 9 Md. App. 15, 262 A. 2d 331 (1970).

The evidence produced by the State in the instant case consisted primarily of the testimony of Thelma Jean Banks, and the chemist, Richard Brunell. Miss Banks placed the appellant at the scene of the slaying. She told the jury about a remark made by appellant to the decedent, and that immediately following that remark the decedent was shot. The chemist, as a result of a neutron activation analysis, established that gunpowder residue

was on the right hand of the appellant in sufficient quantity to conclude that the appellant had recently fired a hand gun. This evidence, if believed, was sufficient to sustain the conviction. The jury was not required to believe the appellant nor his alibi. *Sabatini v. State,* 14 Md. App. 431, 287 A. 2d 511 (1972) ; *Pinkney v. State,* 12 Md. App. 598, 283 A. 2d 800 (1971) ; *Williams v. State,* 11 Md. App. 350, 274 A. 2d 403 (1971) ; *Derricks and Hilgeman v. State,* 9 Md. App. 261, 263 A. 2d 597 (1970) ; *Elder v. State,* 7 Md. App. 368, 255 A. 2d 91 (1969) ; *Fletcher and Smith v. State,* 6 Md. App. 219, 251 A. 2d 35 (1969) ; *Tillery v. State,* 3 Md. App. 142, 238 A. 2d 125 (1968).

*Judgment affirmed.*