MABLE DARCEL LOVELESS *v.* STATE OF
MARYLAND

[No. 992, September Term, 1977.]

*Decided June 12, 1978.*

564

The cause was argued before GILBERT, C. J., and MOYLAN and MELVIN, JJ.

*William A. Franch* and *Ronald H. Jarashow,* with whom were *Joseph P. Manck* and *Goldsborough, Franch & Collett* on the brief, for appellant.

*W. Timothy Finan, Assistant Attorney General,* with whom were *Francis Bill Burch, Attorney General, Warren B. Duckett, Jr., State's Attorney for Anne Arundel County,* and *David Cuttler, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

This case should not be here. It illustrates for the ten thousandth time what happens when everyone overreacts. It typifies the painful procedural hangover that follows initial excess as even the law must ask in the cold light of the morning after, "What do we do now?" In the most basic of terms, a criminal trial was prematurely aborted when everyone pressed the panic button because somebody said a bad word in a courtroom. Upon this grist, the appellate mills may now grind for a season or two.

The appellant, Mable Darcel Loveless, now claims that her impending trial in the Circuit Court for Anne Arundel County for murder and related offenses will place her for a second time in jeopardy in violation of her constitutional rights guaranteed by the Fifth and Fourteenth Amendments. *Benton v. Maryland,* 395 U. S. 784, 89 S. Ct. 2056, 23 L.Ed.2d 707 (1969). This particular procedural history will flow more clearly if we begin in the present and move backward.

This appeal is from the ruling of Judge E. Mackall Childs

in the Circuit Court for Anne Arundel County denying the appellant's Motion to Dismiss the indictment against her on the grounds of double jeopardy. That motion was made when the State scheduled a retrial in this case for September, 1977. The scheduling of the retrial had followed an earlier mistrial. The appellant first went to trial on these charges on March 8, 1977. Following two days of testimony before a jury, a police officer, in response to a question on cross-examination put by appellant's counsel, mentioned that a State's witness had spent a period of time with "the polygraph operator." Although the jury was carefully screened from observing the scene, legal pandemonium ensued. The appellant moved for a mistrial. The trial judge ultimately granted the motion.

Subject to the narrow limitation yet to be discussed, it is axiomatic that a defendant who has moved for a mistrial waives, by that very motion, all objection to a subsequent retrial. *United States v. Tateo,* 377 U. S. 463, 467, 84 S. Ct. 1587, 12 L.Ed.2d 448, 452 (1964); *United States v. Jorn,* 400 U. S. 470, 91 S. Ct. 547, 27 L.Ed.2d 543 (1971); *United States v. Dinitz,* 424 U. S. 600, 607-608, 96 S. Ct. 1075, 47 L.Ed.2d 267, 273-274 (1976); *Cornish v. State,* 272 Md. 312, 318, 322 A. 2d 880; *Jourdan v. State,* 275 Md. 495, 508, 341 A. 2d 388; *Baker v. State,* 15 Md. App. 73, 289 A. 2d 348; *Bartley and Hill v. State,* 32 Md. App. 283, 289, 362 A. 2d 101.

There is one limitation on the foreclosing effect of a defense request for a mistrial. If the defense is placed in an untenable situation where it has no choice but to request a mistrial because of prosecutorial or judicial "overreaching," then the mere fact that the defense requested the mistrial will not operate as a waiver of later double jeopardy claims. A critical distinction is made, however, between deliberate "prosecutorial or judicial overreaching," on the one hand, and "prosecutorial or judicial error," on the other hand. Mere error, judicial or prosecutorial, even where it is grievous enough 1) to cause a mistrial or 2) to cause an appellate reversal, will not bar a subsequent retrial.

Except in those rare instances where the prosecution or the court has deliberately sabotaged a trial that was going badly, the available redress where an irremediable error is recog-

nized in mid-trial is the declaration of a mistrial followed by a retrial; the available redress where a reversible error has occurred in a trial which runs its full course and results in a conviction is a reversal followed by a retrial. For double jeopardy purposes, it makes no difference whether the former jeopardy runs its full course or is aborted before the verdict. The broad reasoning undergirding this policy decision was cogently set forth by Justice Harlan in *United States v. Tateo, supra,* at 377 U. S. 466, 12 L.Ed.2d 451:

> "While different theories have been advanced to support the permissibility of retrial, of greater importance than the conceptual abstractions employed to explain the Ball principle are the implications of that principle for the sound administration of justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest."

The only time that retrial is barred under double jeopardy principles is when there has been such prosecutorial or judicial overreaching as to have mounted to a deliberate and intentional sabotaging of the earlier trial. *United States v. Jorn, supra,* 400 U. S. at 485, 27 L.Ed.2d at 556; *United States v. Dinitz, supra,* 424 U. S. at 611, 47 L.Ed.2d at 276; *Thompson v. State,* 38 Md. App. 499, 502, 381 A. 2d 704. See also *City of Tucson v. Valencia,* 21 Ariz. App. 148, 517 P. 2d 106 (1973);

*State v. Marquez,* 113 Ariz. 540, 558 P. 2d 692, 694-695 (1976); *People v. Hathcock,* 105 Cal. Rptr. 540, 504 P. 2d 476 (1973).

In the case now before us, we do not perceive prosecutorial error, if any, sufficient even to have caused a mistrial, let alone of such "overreaching" proportions as to bar retrial. The misadventure that brought about the mistrial in this case is regrettable, but at most venial. Indeed, the exaggerated reaction is as difficult to appreciate as is the occurrence of the event reacted to. On the morning of trial, March 8, 1977, a chambers conference was called by the judge to take up a number of matters. The first item discussed was the questions to be asked on voir dire. A defense request for a change of venue was then discussed and denied. A defense request for a continuance — intertwined with discovery issues — was discussed and denied. The last item on the agenda was a defense request that the judge order the prosecutor to tell his witnesses not to mention that George Hendricks, a State's witness, had taken a polygraph test. The judge so ordered. The conference adjourned and everyone moved into the courtroom where the jury selection process began. At the first break, the Deputy State's Attorney called together his witnesses then present and passed on the admonition about the polygraph test. The State had summoned sixteen witnesses in all. The Deputy State's Attorney could not later recall whether Detective Staley, who was scheduled to appear on the second day of trial, was present or not. Detective Staley indicated that he had not been present and had not heard the admonition.

On the second day of trial, Detective Staley testified for the State. Nothing untoward happened. Then the cross-examination began. In the course thereof, the following transpired:

> "Q. Alright. Now, how long did you have Mr. Hendricks in custody or were you with him?
>
> A. We were with him with the exception of the time he was allowed with his father and the time that he was with our polygraph operator . . . we were with him from one o'clock in the afternoon, well, we had

a problem in the afternoon. After we had interviewed Mr. Hendricks, it was . . . ."

With the uttering of the ineffable word "polygraph,"[1] it was as if a rattlesnake had been tossed into a tea party. A bench conference, a defense motion for mistrial opposed by the State, a recess to consider the circumstances, and the final declaration of a mistrial followed in short order. At the later hearing, now before us for review, Judge Childs acutely observed:

> "Frankly, I do not believe that the mere mention of a polygraph could not have been cured by appropriate instructions by the court at that time and the case was permitted to proceed."

We agree with that assessment by Judge Childs. In both *Lusby v. State,* 217 Md. 191, 141 A. 2d 893, and *Kelly v. State,* 16 Md. App. 533, 298 A. 2d 470, key prosecuting witnesses had gone further. They brought out that they had actually taken "lie detector" tests, whereas in this case the reference was simply to the prosecuting witness's having been with a "polygraph operator." Moreover, the testimony had been elicited by the State's Attorney (in *Lusby*) and by the judge (in *Kelly*), whereas in this case the testimony was elicited in cross-examination by defense counsel. In both *Lusby* and *Kelly,* it was the holding of the Court that the trial judge had

---

1. The mere mention of the word "polygraph" — or, worse yet, "lie detector" — seems to have a more leprous quality in the popular mythology of the trial bar than would be indicated by the tone of the few reported decisions dealing with the subject. There, a greater sense of equanimity prevails, recognizing that a relatively new and still experimental scientific technique has not yet received a sufficient level of "general acceptance" in the scientific community to warrant present admissibility, but that work is being done and the possibility of future utility is not forever foreclosed. It is but a specific instance of the broader evidentiary phenomenon of "Relevance and Its Counterweights." In *Rawlings v. State,* 7 Md. App. 611, 256 A. 2d 704, we affirmed the discretionary decision of a trial judge not to admit the results of a polygraph test but nonetheless noted "the assertion of some authorities that advances in the science or art of lie detecting are such as to make the results of lie detector tests, when given under proper conditions, acceptable as evidence. See McCormick, *Evidence,* § 174; Kaplan, *The Lie Detector: An Analysis of Its Place in the Law of Evidence,* 10 Wayne Law Review 381; and Pfaff, *The Polygraph: An Invaluable Judicial Aid,* 50 A.B.A.J. 1130 (1964)."

not abused his discretion in refusing to declare a mistrial. The damage in each case was assessed as being capable of ready repair by an appropriate admonition to the jury.

In assessing the nature of the mistake which precipitated the declaration of a mistrial in this case, Judge Childs characterized the testimonial breach as, at most, a slip of the tongue. If the Deputy State's Attorney was in error at all in failing to notify this particular witness of the court's admonition, the failing was one of simple inadvertence or negligence. Indeed, the defense cross-examination elicited the reference to the tabooed subject. Judge Childs pointed out that the examination dealt with "an area which the court feels that the defense had reason to know [was one where] this sensitive testimony may have come to light." If we may analogize to the tort field, if the Deputy State's Attorney here was negligent, the defense was also guilty of contributory negligence (or, perhaps, an assumption of risk). Even assuming such negligence as would necessitate a mistrial, it would still not be an instance of such prosecutorial overreaching as to bar a retrial. *Lee v. United States,* 432 U. S. 23, 97 S. Ct. 2141, 53 L.Ed.2d 80 (1977); *Muller v. State,* 478 P. 2d 822, 827 (Alaska, 1971).

In this case, there was a profligate rush to mistrial. The defense overreacted and, in turn, persuaded the trial judge to overreact. In this regard, the defense got more than it deserved. We perceive no prosecutorial error serious enough to have necessitated the mistrial; *a fortiori,* we see nothing remotely approaching the prosecutorial "overreaching" that would be necessary to engage the gears of the double jeopardy clause and to bar a retrial of this appellant.

*Judgment affirmed; costs to be paid*
*by appellant.*