# MARIE LANIER BELL *v.* STATE OF MARYLAND

[No. 352, September Term, 1978.]

*Decided January 10, 1979.*

The cause was argued before MOYLAN, LOWE and COUCH, JJ.

*Kenneth V. Heland,* with whom were *Richardson, Anderson & Heland* on the brief, for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Richard D. Warren, State's Attorney for Wicomico County,* and *H. Michael Hickson, Assistant State's Attorney for Wicomico County,* on the brief, for appellee.

Lowe, J., delivered the opinion of the Court.

### - the law -

" 'Tis funny about th' constitution," said *Mr. Dooley on the Choice of Law,* "[i]t reads plain, but no wan can undherstant it without an interpretation." And what could be plainer than the simple elliptical phrase in the fifth amendment of our Constitution:

> "No person shall . . . be subject for the same offense
> to be twice put in jeopardy of life or limb . . . ."

Yet courts are in a constant quandary as to the meaning and extent of those few words. In the case at bar, after having read and having analyzed countless cases on a limited aspect of that fifth amendment's Double Jeopardy Clause, two outstanding trial judges confessed in a written opinion that they were left "somewhat in a state of confusion," even after (or perhaps because of) numerous appellate attempts to clarify this fifth amendment protection.

By process of elimination we know that there are a few "venerable principles of double jeopardy jurisprudence", *e.g.:*

1. A judgment of acquittal by court or jury may not be appealed and terminates the prosecution when a second trial would be permitted by a reversal. *Green v. United States,* 355 U. S. 184, 188 (1957); and

2. The successful appeal of a judgment of conviction, on any ground other than the insufficiency of evidence to support the verdict, *Burks v. United States,* 437 U. S. 1, 57 L.Ed.2d 1 (1978), poses no bar to further prosecution on the same charge.

See *United States v. Scott,* 437 U. S. 1, 57 L.Ed.2d 65 (1978). These after-judgment concepts take cognizance of the primary purpose of the Double Jeopardy Clause, *i.e.,* to protect the integrity of a final judgment. *See Crist v. Bretz,* 437 U. S. 28, 57 L.Ed.2d 24, 30 (1978); *United States v. Scott,*

437 U. S. 82, 57 L.Ed.2d at 74. They are not, therefore, troubled by "the valued right of a defendant to have this trial completed by the particular tribunal summoned to sit in judgment on him . . . ." *Downum v. United States,* 372 U. S. 734, 736 (1963).

From the same simple clause in the fifth amendment (that reads so plain), the Supreme Court "has also developed a body of law guarding the separate but related interest of a defendant in avoiding multiple prosecutions even where no final determination of guilt or innocence has been made. Such interests may be involved in two different situations: the first, in which the trial judge declares a mistrial; the second, in which the trial judge terminates the proceedings favorably to the defendant on a basis not related to factual guilt or innocence." *United States v. Scott,* 437 U. S. 82, 57 L.Ed.2d at 75.

Much of the constitutional law interpreting the Double Jeopardy Clause arises from mistrials declared at the urging of the prosecutor or sua sponte by the judge. Whenever a trial judge declares a mistrial on his own motion, or upon that of the prosecutor, he all but invariably contemplates that the prosecutor will be permitted to proceed anew, notwithstanding the defendant's plea of double jeopardy. *See Lee v. United States,* 432 U. S. 23, 30 (1977). That does not occur, however, unless taking all the circumstances into consideration, there was a "manifest necessity" for the judicial abortion, or the ends of public justice would otherwise be defeated. See *United States v. Perez,* 22 U. S. (9 Wheat.) 579 (1824); *Gori v. United States,* 367 U. S. 364 (1961); *Downum v. United States, supra; United States v. Jorn,* 400 U.S. 470 (1971); *Illinois v. Somerville,* 410 U. S. 458 (1973); *Arizona v. Washington,* 434 U. S. 497, 54 L.Ed.2d 717 (1978).

When a mistrial is granted upon a defendant's own motion, the "manifest necessity" standard is not applicable. To the contrary, "a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." *United States v. Jorn,* 400 U. S. at 485. This is so because it is the defendant himself who retains "primary

control over the course to be followed in the event of such error." *United States v. Dinitz,* 424 U. S. 600, 609 (1976). While the cases recognized (mostly by dicta) that limitations existed to the general rule that a defendant's motion for mistrial waives objection to subsequent mistrial, the breadth of those limitations had not yet been defined in Maryland when Judges Pollitt and Truitt decided the question in the case at bar.

Judge Thompson had anticipated the problem in *Thompson v. State,* 38 Md. App. 499, 502 (1978):

> "Although the double jeopardy clause is designed to protect the defendant against multiple punishments or repeated prosecutions for the same offense, *United States v. Dinitz,* 424 U. S. 600, 96 S. Ct. 1075, 47 L.Ed.2d 267 (1976), a request by a defendant for a mistrial ordinarily removes any bar to reprosecution even though the motion was necessitated by prosecutorial or judicial error. *Lee v. United States,* 432 U. S. 23, 97 S. Ct. 2141, 53 L.Ed.2d 80 (1977); *United States v. Dinitz, supra.* This rule is not absolute and where a mistrial is the product of prosecutorial or judicial overreaching, the double jeopardy clause prevents a retrial. *Lee v. United States, supra; United States v. Jorn,* 400 U. S. 470, 91 S. Ct. 547, 27 L.Ed.2d 543 (1971). The exact boundaries of prosecutorial overreaching, necessary to bar retrial, have not been specifically delineated by the Supreme Court. Other courts which have considered the point generally hold that prosecutorial error attributable to negligence does not amount to overreaching, *People v. Baca,* Colo., 562 P. 2d 411 (1977), while intentional misconduct calculated to gain a more favorable chance for conviction or to abort a trial that is going badly prevents reprosecution. *United States v. Kessler,* 530 F. 2d 1246 (5th Cir. 1976). The appellant argues that prosecutorial overreaching is not confined to intentional misconduct but encompasses gross negligence as well. *Commonwealth v. Bolden,* 472 Pa. 602, 373 A. 2d 90 (1977). Although in *Bolden,*

the Court noted that it is unclear from the decisions of the Supreme Court whether overreaching is limited to intentional misconduct or whether it extends to gross negligence on the part of the prosecutor or judge, it concluded gross negligence was encompassed in the term after an examination of the purposes underlying the double jeopardy clause. The Court stated:

> 'A defendant forced to request a mistrial by conduct which conspicuously fails to satisfy professional standards should not be required to bear the heavy burdens incident to reprosecution.' 373 A. 2d at 109."

Unfortunately, we decided in *Thompson* that is was not necessary to meet the question in that case:

> "Although neither the Court of Appeals nor this Court has specifically addressed this issue, we need not define the boundaries of prosecutorial overreaching in this case because no matter what standard we apply the appellant has failed to demonstrate the existence of any conduct which would invoke the bar of double jeopardy." *Thompson v. State,* 38 Md. App. at 503.

One month after the Wicomico County Circuit Court opinion was filed in the present case, denying the motion to dismiss on double jeopardy grounds, we decided *Loveless v. State,* 39 Md. App. 563 (1978). There, Judge Moylan made it abundantly clear that this Court did not agree with the Pennsylvania holding in *Bolden, supra* (cited in *Thompson, supra*), that "gross negligence" is encompassed in the term "prosecutorial overreach" for purposes of denying retrial after a mistrial on defendant's motion.

> "There is one limitation on the foreclosing effect of a defense request for a mistrial. If the defense is placed in an untenable situation where it has no choice but to request a mistrial because of prosecutorial or judicial 'overreaching,' then the

mere fact that the defense requested the mistrial will not operate as a waiver of later double jeopardy claims. A critical distinction is made, however, between deliberate 'prosecutorial or judicial overreaching,' on the one hand, and 'prosecutorial or judicial error,' on the other hand. Mere error, judicial or prosecutorial, even where it is grievous enough 1) to cause a mistrial or 2) to cause an appellate reversal, will not bar a subsequent retrial." *Loveless v. State,* 39 Md. App. at 565.

Unfortunately again, as pointed out by appellant Bell, the *Loveless* language is also dicta. The case did not require such definition, and we concluded that we saw:

". . . nothing remotely approaching the prosecutorial 'overreaching' that would be necessary to engage the gears of the double jeopardy clause and to bar a retrial of this appellant." *Id.* at 569.

Two days after Judge Moylan's opinion was filed, the Supreme Court decided *United States v. Scott,* 437 U. S. 82, 57 L.Ed.2d 65, which held generally that where a defendant seeks to have his trial terminated without any submission to a jury as to guilt or innocence, an appeal by the government from his successful effort to do so does not offend the Double Jeopardy Clause. Scott acknowledges the *Dinitz* limitation that

"[t]he Double Jeopardy Clause does protect a defendant against governmental *actions intended to provoke mistrial requests* and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions." *United States v. Dinitz,* 424 U. S. at 611 (emphasis added).

It is apparent that this narrow limitation constitutes the sole exception to the basic rule that a defendant who has moved

for a mistrial in an earlier proceeding has, by that very motion, waived further objection to a subsequent retrial.

"We think that in a case such as this the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause if the Government is permitted to appeal from such a ruling of the trial court in favor of the defendant. We do not thereby adopt the doctrine of 'waiver' of double jeopardy rejected in Green, supra. Rather, we conclude that the Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice. In Green the question of defendant's factual guilt or innocence of murder in the first degree was actually submitted to the jury as a trier of fact; in the present case, respondent successfully avoided such a submission of the first count of the indictment by persuading the trial court to dismiss it on a basis which did not depend on guilt or innocence. He was thus neither acquitted nor convicted, because he himself successfully undertook to persuade the trial court not to submit the issue of guilt or innocence to the jury which had been empaneled to try him.

The reason for treating a trial aborted on the initiative of the trial judge differently from a trial verdict reversed on appeal, for purposes of double jeopardy, is thus described in Jorn, supra, at 484, 27 L Ed 2d 543, 91 S Ct 547 (opinion of Harlan, J.):

'[I]n the first situation the defendant has not been deprived of his option to go to the first jury, and, perhaps, end the dispute then and there with an acquittal. On the other hand, where the judge, acting without the defendant's consent, aborts the proceeding, the defendant

has been deprived of his "valued right to have
his trial completed by a particular tribunal." '

*We think the same reasoning applies in pari passu
where the defendant, instead of obtaining a reversal
of his conviction on appeal, obtains the termination
of the proceedings against him in the trial court
without any finding by a court or jury as to his guilt
or innocence.* He has not been 'deprived' of his
valued right to go to the first jury; only the public
has been deprived of its valued right to 'one complete
opportunity to convict those who have violated its
laws.' Arizona v Washington, supra, at 509, 54 L Ed
2d 717, 98 S Ct 824. No interest protected by the
Double Jeopardy Clause is invaded when the
Government is allowed to appeal and seek reversal
of such a midtrial termination of the proceedings in
a manner favorable to the defendant." *United States
v. Scott,* 437 U. S. 82, 57 L.Ed.2d at 79-80 (footnotes
omitted and emphasis added).

Had Judge Pollitt and Judge Truitt had before them the
interpretations which we have now, the Constitution might
have read "plain" to them. Despite their confessed
confounding, their instincts were as accurate as their
analysis. They held, even before we had suggested it in
*Loveless,* that:

"It is only where bad faith conduct of the judge or
prosecutor threatens harassment of an accused by
successive prosecutions or declarations of mistrials
so as to afford the prosecution a more favorable
opportunity to convict the defendant, that the
Double Jeopardy Clause bars retrial. The
prosecutorial misconduct must be motivated by bad
faith or undertaken to harass or prejudice."

Unlike *Thompson* and *Loveless, supra,* the facts here require
that we draw the narrow line beyond which the conduct of

the State is so aberrant as to preclude a retrial when an accused feels compelled to move for mistrial.

## - this case -

Marie Lanier Bell was charged with having procured Ralph Dulaney Mason, Jr. to murder her husband. Mason was apprehended promptly and, after having acquiesced to a plea bargain, agreed to testify against Mrs. Bell. The bargain was made pursuant to Md. Rule 733 a.; however, significant elements thereof were withheld from both the judge when he approved it and from Mrs. Bell's attorneys, in violation of Md. Rule 733 b. and *Brady v. Maryland,* 373 U. S. 83 (1963). After our own independent review of the record, we adhere to the court's findings below in which such conduct was characterized as "if not prosecutorial misconduct, ... certainly gross negligence." But that was not the conduct that brought about the mistrial. The *Brady* violation was not discovered until the trial had been aborted.[1]

---

1. The opinion below outlined another instance of comparable prosecutorial misconduct in this regard:

"Another witness for the State at the trial was one Robert M. Anderson, who testified, among other things, that Mrs. Bell had paid him money to assault her husband and that he had accepted her money but did not assault her husband and had never intended to do so. When asked if he had been made any promises by anyone on behalf of the State, in exchange for his testimony, he said that he had received no such promises or inducements."

The court below found in this regard:

"That prior to the trial, the State's Attorney had written a letter to the attorney for Robert Anderson, assuring him that Mr. Anderson would not be prosecuted for his part in this matter.

That Robert Anderson was a key witness for the prosecution as to at least some of the charges against Mrs. Bell.

That Anderson's attorney had requested the aforesaid letter from the State's Attorney prior to advising Anderson to testify.

That irrespective of whether or not Anderson had committed a 'prosecutable offense,' this 'color of immunity' would most certainly bear on his motivation for testifying and on his credibility.

That Anderson, on cross-examination, denied being made any promises in return for his testimony. (Joint Ex. 1A, TR 66-67).

That for the reasons stated in the aforegoing paragraph (3), it was the duty of the State's Attorney to disclose these facts to defense counsel prior to trial, and that he failed to do so, and that

The conduct that brought on the motion by the defendant to terminate the proceeding occurred during the testimony of the perpetrator's accomplice, Mason, which if believed and corroborated, would have been more than sufficient to sustain a conviction. The opinion of the judges below described what occurred:

"During the course of his testimony Mason made allegations of a very serious nature against two of the defense attorneys. It is unnecessary to detail those allegations here. The substance of the allegations was that Don E. Richardson, Esquire, was in some way involved in the conspiracy to murder Mr. Bell and had offered Mason a sum of money if he refused to testify in the case. He also accused Vaughn E. Richardson, Esquire, with threatening his life if he did not refuse to testify. Obviously shocked by these allegations, defense counsel, quite properly we think, found it necessary to cross-examine Mason about them at great length.

. . .

Before the trial resumed on February 13, 1978, defendant moved for a mistrial. The basis of the Motion was that the accusations made against defense counsel by Mason had deprived the defendant of her right to the effective assistance of counsel pursuant to Amendment VI of the *Constitution of the United States.* The Court, out of the presence of the jury, conducted an immediate hearing on that Motion. That Hearing is fully reported in the record. It was obvious to the Court that the allegations made by Mason about defense counsel made it absolutely necessary that counsel be sworn and testify to refute those allegations. Their becoming witnesses in the case would in turn make it necessary for them to

such failure was a denial of due process to this defendant under *Brady v. Maryland.*" (paragraph numbers omitted).

This too was discovered after the mistrial was granted.

withdraw as counsel. *Maryland Rules of Procedure, Code of Professional Responsibility,* DR 5-102 (A). Since this would leave the defendant with no counsel the Court reluctantly concluded that there was a 'manifest necessity' to declare a mistrial ,which we did."

After a hearing, the court factually found:

"That prior to the start of the trial of Mrs. Bell, the State's Attorney knew that Mason had made serious allegations of misconduct against at least one of her attorneys, Vaughn E. Richardson. It does not appear that the State's Attorney was personally aware of the allegations against Don E. Richardson.

That this information was considered to be of some significance by the authorities is obvious. Mr. Eaton had notified the Salisbury Police Department of these allegations on February 19th. When Mr. Warren and Mr. Eaton visited Mason at the jail on February 20th, they were accompanied by Lieutenant Webster of that department. On the next day the Salisbury Police Department began an investigation of those allegations. There is testimony that Lieutenant Webster was at the jail to insure the security of the prisoner and that the police investigation was because of the concern of the Chief of Police about the accessibility of Mason to an attorney. Neither the security of the prisoner nor his accessibility to an attorney are the responsibility of the Salisbury Police Department. It is the opinion of this Court that the purpose of the police presence was to investigate the charges made against the attorneys by Mason, either with or without the direction of the State's Attorney.

That with this knowledge possessed by the State's Attorney and the police, the State's Attorney knew, or should have known, that Mason would in all probability be cross-examined by the attorney against whom he had made these allegations. This

Court believes that these circumstances should have made any reasonably competent trial attorney conclude that there was at the very least a strong possibility that Mason would repeat those allegations in Court.

That it is undisputed that the State's Attorney took no steps whatsoever to attempt to prevent Mason from repeating those allegations in Court. The very least that should have been done was for the State's Attorney to caution Mason that his allegations, *even if true,* were collateral and irrelevant to the issues of the trial of Mrs. Bell and should not be repeated in Court.

That the State's Attorney knew or should have known that if such allegations were repeated in Court, it would be necessary for defense counsel to refute them under oath. The State's Attorney further knew or should have known that this could make it necessary for counsel to withdraw from the case and cause a mistrial. The Court does *not* find that the State's Attorney wanted or *deliberately* sought a mistrial. The Court does find that it was the duty of the State's Attorney to make known to the Court and to defense counsel the allegations made by Mason against counsel in order that proper steps could be taken to attempt to avoid a mistrial, either by a cautionary instruction by the Court to Mason, or, if it appeared that Mason would not respect such an instruction, by having additional counsel named for the defense prior to the start of the trial.

That the State's Attorney failed to make such disclosure to the Court or to defense counsel." (paragraph numbers omitted).

- our holding -

Perhaps it would have been more charitable to the prosecutor had the court found that all of the misconduct was intentionally motivated for trial advantage. Having leaned

toward the alternative of gross negligence, the judges damned the prosecution with faint praise. The *ignorantia juris* which such a holding necessitates is more demeaning in one sense than an accusation of having committed an intentional foul. It is not, however, more culpable.

Whichever view the judges took, or that we might take upon our independent review of the record, would not have affected the outcome of the double jeopardy issue. The key sentence in the opinion was that

> "The Court does *not* find that the State's Attorney wanted or *deliberately* sought a mistrial."

Because we agree after review of the record, that finding concludes the question in light of our definition. As stated in *Dinitz* and repeated in *Scott,* the only conduct sufficiently grave to deny a retrial when mistrial was granted on motion of defendant is when

> " . . . governmental actions [are] intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions." *United States v. Dinitz,* 424 U. S. at 611.

Whether the misconduct here was grossly negligent or intentionally perpetrated tactically to gain a trial advantage is of no consequence to the question of retrial. It was not intended to provoke a mistrial, but was, at worst, an intentional foul to win the trial then in progress.

It need hardly be noted that the *Brady* violations were of the same nature. The information that the State failed to disclose as it should have could hardly have been intended to provoke a mistrial. Had it become known during the trial, the defendant still had the option to go to the first jury, and perhaps end the dispute by acquittal, retaining his "valued right to have his trial completed by a particular tribunal," *Wade v. Hunter,* 336 U. S. 684, 689 (1949); or, at worst, perhaps gain a reversal and retrial on appeal. The defendant was still in control of the course to be followed. See *Dinitz* and *Scott,* both *supra.*

Appellant is not being placed in jeopardy twice for the same offense. The Constitution "reads plain."

*Judgment affirmed.*
*Costs to be paid by appellant.*