MARIE LANIER BELL *v.* STATE OF MARYLAND

[No. 12, September Term, 1979.]

*Decided October 22, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, ORTH and COLE, JJ.

*Kenneth V. Heland,* with whom were *Richardson, Anderson & Heland* on the brief, for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Deborah K. Handel, Assistant Attorney General,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The issue for decision in this criminal case is whether the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States [1] would be violated by a retrial of the appellant, Marie Lanier Bell, after her original trial had ended in a mistrial at her request.

## I

Mrs. Bell went to trial before a jury in the Circuit Court for Wicomico County, Pollitt, J. and Truitt, J. presiding, on charges that she had solicited Robert M. Anderson to commit battery upon her husband, William Roy Bell, and that about six weeks thereafter she had murdered her husband, conspired with Ralph Dulaney Mason, Jr. to murder her husband, and conspired with Mason to beat her husband with intent to disable him. Her attorneys were Vaughn E. Richardson, Esq., Don E. Richardson, Esq. and Kenneth E. Heland, Esq. Mason, her accomplice, who was also under indictment for the murder and related charges, had agreed, under a plea bargain arrangement, to testify for the State in the prosecution of Mrs. Bell. He did so at length. His testimony, if believed and corroborated, established the State's case in large measure.[2] During cross-examination by

---

1. "... nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. Const. amend. V.

2. Mason testified that Mrs. Bell had requested him, for a price, to beat up her husband. Ultimately they reached an agreement whereby he was to kill her husband for $5,000 and a Corvette automobile. Mason went to the husband's house, hid in a closet, and, when the husband came home, shot him three times. Mason said: "He didn't even know what happened. He was laying there on the floor. I heard all the air go out of him. You know, how you lose all your air. I knew he was dead."

Vaughn Richardson, Mason made serious allegations against that attorney and against Don Richardson. He declared that Vaughn Richardson had threatened his life and the lives of members of his family if he did not refuse to testify, and that Don Richardson had offered him $5,000 to remain silent. He indicated that Don Richardson had been involved in the conspiracy to murder Mr. Bell.

Before trial resumed the next morning, Mrs. Bell filed a motion for a mistrial. The motion was expressly predicated upon the allegations made by Mason concerning the two attorneys. It concluded:

> That the mere possibility that one or more of the jurors could believe these statements of said Ralph D. Mason, Jr. creates irreparable harm to the Defendant's case and to the right of the Defendant to have representation of counsel pursuant to the Sixth Amendment of the Constitution of the United States and for that reason a mistrial should be declared.

The motion was heard the same day and argued by defense counsel. The reasons advanced in urging the declaration of a mistrial were those set out in the motion. It was asserted that Vaughn Richardson and Don Richardson would have to take the stand for the defense. This would probably require them to strike their appearance and deprive the defendant of the effective assistance of counsel. Heland told the court: "Their involvement [in the preparation of the defense] has been much greater than my involvement up to this point in time. To ask me to pick up the ball is also prejudicial." The prosecutor told the court that he was "sure that the court [was] aware that the testimony, where cross-examination began yesterday, was probably as much a surprise to me as it was to anybody else."

After due deliberation, the court granted the motion and declared a mistrial. In informing the jury of its action, it referred to the testimony attacking the integrity of two of the defense counsel. It observed that the defendant was entitled to effective representation and that her fate largely depended

upon that representation. It stated that Mason's allegations had "put counsel in the position of having to take the stand to refute that which was said." It explained that the Code of Professional Responsibility, DR 5-102 (A), required, in such circumstances, that the lawyers withdraw from the case and that their firm shall not continue representation at the trial. A juror was withdrawn and the jury was discharged.

The prosecutor asked whether the court had determined whether there had been any prosecutorial misconduct. Truitt, J. replied, "Absolutely none." Pollitt, J. said:

> The Court is satisfied beyond any question that there was no prosecutorial misconduct. We think the State's Attorney was just as surprised as was the defense attorneys of the extraneous statements by the witness, which had nothing to do with the case, the real issues in the case.
>
> There is no reason to think that there has been any prosecutorial misconduct. There is no reason to think that there has been any harassment of the defendant by the deliberate action of the prosecutor or the Court, no bad faith on the part of any attorneys involved in the case, and no bad faith on the part of the Court.
>
> It is an unfortunate situation. There is nothing in the situation as the Court sees it at this time which will prevent a retrial with other counsel. It is just unfortunate that under the Code of Professional Responsibility when counsel are called upon to take the stand to refute the allegations against them, that makes it mandatory that they withdraw from the case and makes it essential that this trial be terminated, despite our reluctance to do so.

Some three weeks later the State's Attorney filed two criminal informations against Mrs. Bell charging her with offenses relating to the homicide.

## II

About a month after the filing of the informations, Mrs.

Bell filed a motion to dismiss the indictment and the informations, claiming that a trial on them would violate her rights against double jeopardy. She alleged that "subsequent to the granting of the mistrial certain facts have come to [her] attention which indicate that the circumstances necessitating the mistrial were the result of prosecutorial overreaching and misconduct." Mrs. Bell subsequently submitted to the court a memorandum setting out additional factual bases in support of her motion. With reference to the testimony of Mason, Mrs. Bell asserted that the prosecutor had not only been aware of the substance of Mason's allegations with respect to the attorneys but had conferred with Mason about them before the trial and had taken statements from purported witnesses concerning the allegations. Notwithstanding this knowledge, the prosecutor called Mason to the stand "as a State's witness when he knew or should have known that the making of the allegations by [Mason] would be prejudicial to the Defendant and her counsel and would effectively deprive her of her right to counsel . . . and would result in a mistrial," because the allegations would surely come out on cross-examination. She asserted that the failure to advise the court and defense counsel of the allegations and the calling of Mason to testify, "amounted to prosecutorial overreaching and misconduct, in that [the prosecutor] knew or should have known that the making of the allegations would prejudicially taint the jury; would subject the Defendant with the necessity of having to ask for a mistrial; that a mistrial would result in another delay of her case while she would continue to be incarcerated without bond; and that a mistrial and the allegations would potentially deprive her of her right to have counsel of her choice representing her." She suggested that under the circumstances, the "determination that there was no prosecutorial misconduct should not be considered final and is subject to review in a Motion to Dismiss."

The memorandum also referred to the plea bargain arrangement between the prosecution and Mason and alleged that certain material agreements had not been disclosed to the court by the prosecutor when requesting and receiving

the court's approval of the plea bargain, *see* Md. Rule 733 c, or before the start of the subsequently aborted trial.[3]

A plenary hearing was held on the motion to dismiss. With respect to Mason's allegations concerning defense counsel, the court found that the State's Attorney knew, prior to trial, of the allegations as to Vaughn Richardson but not about those as to Don Richardson. Mason's attorney had informed the Salisbury Police Department of the allegations several days before the date scheduled for trial. Mason's counsel, the prosecutor and a police lieutenant interviewed Mason at the jail the day before the trial. The court thought that the purpose of the presence of the police officer "was to investigate the charges made against the attorneys by Mason, either with or without the direction of the State's Attorney." The court said:

> That with this knowledge possessed by the State's Attorney and the police, the State's Attorney knew, or should have known, that Mason would in all probability be cross-examined by the Attorney against whom he had made these allegations. This Court believes that these circumstances should have made any reasonably competent trial attorney conclude that there was at the very least a strong possibility that Mason would repeat those allegations in court.
>
> That it is undisputed that the State's Attorney took no steps whatsoever to attempt to prevent Mason from repeating those allegations in Court. The very least that should have been done was for the State's Attorney to caution Mason that his allegations, *even if true,* were collateral and

---

3. Shortly after the grant of the mistrial in Mrs. Bell's case, Mason appeared before the court on the charges against him. Pursuant to the plea bargain agreement, he tendered a plea of guilty to the second degree murder of Mr. Bell. The additional plea bargain arrangements were brought out during the inquiry by the court to determine whether the plea should be accepted. During the heated discussion which followed this revelation, Mason flatly denied that he had committed the homicide, with the result that the court refused to accept his plea. The case was continued until further notice.

irrelevant to the issues of the trial of Mrs. Bell and should not be repeated in Court.

That the State's Attorney knew or should have known that if such allegations were repeated in Court, it would be necessary for defense counsel to refute them under oath. The State's Attorney further knew or should have known that this could make it necessary for counsel to withdraw from the case and cause a mistrial. The Court does *not* find that the State's Attorney wanted or *deliberately* sought a mistrial. The Court does find that it was the duty of the State's Attorney to make known to the Court and to defense counsel the allegations made by Mason against counsel in order that proper steps could be taken to attempt to avoid a mistrial, either by a cautionary instruction by the Court to Mason, or, if it appeared that Mason would not respect such an instruction, by having additional counsel named for the defense prior to the start of the trial.

That the State's Attorney failed to make such disclosure to the Court or to defense counsel. (paragraph numbers omitted).

The hearing court determined the law to be that when a mistrial is granted at the request of the defendant

the prohibition against double jeopardy generally will not bar reprosecution. It is only where bad faith conduct of the judge or prosecutor threatens harassment of an accused by successive prosecutions or declarations of mistrials so as to afford the prosecution a more favorable opportunity to convict the defendant that the Double Jeopardy Clause bars retrial. The prosecutorial misconduct must be motivated by bad faith or undertaken to harass or prejudice.

It applied the law to the facts as found. Although satisfied that "the matters necessitating that mistrial were the result of prosecutorial error and negligence," the court was "not

satisfied, however, that the conduct of the prosecutor was motivated by bad faith or was with the deliberate intent of harassing the accused or of seeking a more favorable opportunity to secure a conviction." It denied the motion to dismiss. It said: "The right of the people to have this case determined on its merits, which is also the right of the accused, should not be thwarted by the negligence of their counsel, no matter how great." [4]

On direct appeal the Court of Special Appeals affirmed the order denying the motion to dismiss. *Bell v. State,* 41 Md. App. 89, 395 A.2d 1200 (1979). It found that the court below had correctly determined the law, and, in light of that law, the declaration of the hearing court that it did *"not* find that the State's Attorney wanted or *deliberately* sought a mistrial," a factual conclusion which was not clearly erroneous, Md. Rule 1086, resolved the question. It explained:

> Whether the misconduct here was grossly negligent or intentionally perpetrated tactically to gain a trial advantage is of no consequence to the question of retrial. It was not intended to provoke a mistrial, but was, at worst, an intentional foul to win the trial then in progress. [*Bell* at 101.]

We granted appellant's petition for a writ of certiorari and the State's conditional cross-petition. The appellant's petition presented seven questions which are encompassed in the issue for decision set out at the beginning of this opinion. The State's cross-petition asked that if we grant appellant's petition, we include the question: "Did the reindictment of [Mrs. Bell] following the mistrial charge the same offenses so as to preclude retrial under the Double Jeopardy clause?"

---

4. The court also determined that the allegations concerning the failure to disclose all of the plea bargain agreements were correct and concluded that such failure, while not amounting to prosecutorial misconduct, was gross negligence. The court took these negligent acts into account in determining the motion to dismiss. We point out that the motion for a mistrial was predicated solely upon the accusations of Mason during his testimony and that the negligence regarding the plea bargain arrangement played no part in the request and grant of the mistrial.

## III

There is no provision concerning double jeopardy in the Constitution of Maryland. But this State had early on made available by way of the common law protection against being twice placed in jeopardy, and the common law concept of the doctrine prevailed in this jurisdiction. *Parojinog v. State,* 282 Md. 256, 260, 384 A.2d 86 (1978); *State v. Shaw,* 282 Md. 231, 232, 383 A.2d 1104 (1978); *State v. Barger,* 242 Md. 616, 220 A.2d 304 (1966); *Hoffman v. State,* 20 Md. 425 (1863). In *Benton v. Maryland,* 395 U.S. 784, 787, 89 S.Ct. 2056 (1969), however, the Supreme Court of the United States held that the prohibition against twice placing an accused in jeopardy contained in the Fifth Amendment to the Constitution of the United States is applicable to state criminal prosecutions by virtue of the Fourteenth Amendment. *Jourdan v. State,* 275 Md. 495, 506, 341 A.2d 388 (1957); *Neal v. State,* 272 Md. 323, 327, 322 A.2d 887 (1974); *Cornish v. State,* 272 Md. 312, 316, 322 A.2d 880 (1974); *Matter of Anderson,* 272 Md. 85, 92-93, 321 A.2d 516, *appeal dismissed sub nom. Epps v. Maryland,* 419 U.S. 809 (1974); *Pugh v. State,* 271 Md. 701, 704-705, 319 A.2d 542 (1974); *Couser v. State,* 256 Md. 393, 395, 260 A.2d 334 (1970). Consequently, the decisions applying Fifth Amendment principles apply to double jeopardy issues.

One aspect of the double jeopardy principle concerns retrial after mistrial. A mistrial may be declared (1) without the defendant's request or consent upon motion of the prosecution or *sua sponte* by the judge; or (2) upon the defendant's request or with his consent. They call for different considerations.

### (1)

Over one hundred and fifty years ago the Supreme Court established the test regarding retrial after a mistrial granted without the defendant's request or consent.

> Since Mr. Justice Story's 1824 opinion for the Court in *United States v. Perez,* 9 Wheat. 579, 580, 6 L.Ed. 165 [the Supreme Court of the United States]

has held that the question whether under the Double Jeopardy Clause there can be a new trial after a mistrial has been declared without the defendant's request or consent depends on whether "there is a manifest necessity for the [mistrial], or the ends of public justice would otherwise be defeated." [*United States v. Dinitz,* 424 U.S. 600, 606-607, 96 S.Ct. 1075 (1976).] [5]

See *Jourdan,* 275 Md. at 510; *Cornish,* 272 Md. at 316-320.

### (2)

When the mistrial is declared upon the defendant's request or with his consent, the general rule is that "the Double Jeopardy Clause is not offended by a second prosecution." *United States v. Scott,* 437 U.S. 82, 93, 98 S.Ct. 2187 (1978). "[W]here circumstances develop *not attributable to prosecutorial or judicial overreaching,* a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." *Dinitz,* 424 U.S. at 607 (emphasis added). The Court explained:

> Even when judicial or prosecutorial error prejudices a defendant's prospects of securing an acquittal, he may nonetheless desire "to go to the first jury and, perhaps, end the dispute then and there with an acquittal." [*Id.* at 608, quoting *United States v. Jorn,* 400 U.S. 470, 484, 91 S.Ct. 547 (1971).]

The Court, however, noted a caveat:

> But it is evident that when judicial or prosecutorial error seriously prejudices a defendant, he may have little interest in completing a trial and obtaining a verdict from the first jury. The defendant may reasonably conclude that a continuation of the

---

5. The Supreme Court's attempts to give content to the term "manifest necessity" were reviewed in Arizona v. Washington, 434 U.S. 497, 98 S.Ct. 824 (1978). The Court noted, at 514-516, that "the trial court's discretion must be exercised with a careful regard for the interests first described in United States v. Perez." United States v. Scott, 437 U.S. 82, 93, 98 S.Ct. 2187 (1978).

tainted proceeding would result in a conviction followed by a lengthy appeal and, if a reversal is secured, by a second prosecution. In such circumstances, a defendant's mistrial request has objectives not unlike the interests served by the Double Jeopardy Clause — the avoidance of the anxiety, expense, and delay occasioned by multiple prosecutions. [*Ibid.*]

When a defendant must determine whether or not to request or consent to a mistrial in response to judicial or prosecutorial error, he generally faces a "Hobson's choice" between giving up the first tribunal and continuing a trial tainted by prejudicial judicial or prosecutorial error. "The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error." *Id.* at 609.[6]

It is manifest that a defendant loses primary control over the course to be followed when the error is caused by judicial or prosecutorial overreaching. It is then that he is faced with the "Hobson's choice" of continuing with the trial or requesting or consenting to a mistrial. The plurality opinion in *Jorn* made clear that "prosecutorial or judicial overreaching" in this context means prosecutorial or judicial impropriety "designed to avoid an acquittal. . . ." 400 U.S. at 485, n. 12. And in *United States v. Tateo,* 377 U.S. 463, 84 S.Ct. 1587 (1964), the Court indicated that the commission of an error would not bar a mistrial unless it was with the purpose of preventing an acquittal.

If there were any intimation in a case that prosecutorial or judicial impropriety justifying a mistrial resulted from a fear that the jury was likely to acquit the accused, different considerations would, of course, obtain. [*Id.* at 468, n. 3.]

---

6. The permissibility of a retrial following a mistrial does not depend on a knowing, voluntary, and intelligent waiver of a constitutional right. The Supreme Court has expressly rejected such a notion. United States v. Dinitz, 424 U.S. 600, 609, n. 11, 96 S.Ct. 1075 (1976) and cases therein cited.

In *Dinitz,* the Court restated the test thus:

> The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where "bad-faith conduct by judge or prosecutor," ... threatens the "[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict" the defendant. [*Id.* 424 U.S. at 611.]

It carefully pointed out that the judicial impropriety there was "not done in bad faith in order to goad the respondent into requesting a mistrial or to prejudice his prospects for an acquittal. . . . [T]he [appellate] court did not suggest, the respondent has not contended, and the record does not show that the judge's action was motivated by bad faith or undertaken to harass or prejudice the respondent." *Id.* at 611.

*Lee v. United States,* 432 U.S. 23, 97 S.Ct. 2141 (1977), applying the *Dinitz* test, repeated it, at 33, and construed it:

> It follows under *Dinitz* that there was no double jeopardy barrier to petitioner's retrial unless the judicial or prosecutorial error that promoted petitioner's motion was "intended to provoke" the motion or was otherwise "motivated by bad faith or undertaken to harass or prejudice" petitioner. [*Id.* at 33-34, quoting *Dinitz* at 611.]

The teaching of the Supreme Court cases is clear. Retrial is not barred as violative of the Double Jeopardy Clause of the Fifth Amendment when a mistrial is declared at the behest or with the consent of the defendant unless such error or misconduct, sufficient to justify the declaration of a mistrial, was committed by either the prosecutor or the court with the intention of (1) forcing the defendant to move for or consent to a mistrial, or (2) prejudicing his prospects for an acquittal

if the trial continued to a verdict. It is "bad faith conduct by judge or prosecutor" with such intent that prohibits retrials.[7]

The keystone of the test formulated and consistently followed by the Supreme Court is the requirement of "intent." And intent is implicit in "bad faith." Thus, the test does not encompass negligence. *See Illinois v. Sommerville,* 410 U.S. 458, 93 S.Ct. 1066 (1973). "Intentional" and "negligent" are mutually exclusive. It is true that the greater degree of negligence, the closer the error comes to being intentional. That is, an error by judge or prosecutor which appears to be "gross negligence" may, of course, provide some evidence of intent. But if what seems to be negligent is so gross as to warrant a determination that the act was in fact intentional, it is not then negligent." [8]

## IV

When the test is applied to the issue for decision in this case, the answer is manifest. When the errors alleged in the defendant's motion for a mistrial are considered,[9] there is no

---

**7.** It seems that the Court of Special Appeals did not recognize the second aspect of prosecutorial intent. A prosecutor may not intend to provoke a mistrial by his bad faith conduct or overreaching but be perfectly content, having prejudiced the accused's prospects for an acquittal by acts which would justify a mistrial, to have the trial proceed to verdict. Such conduct is also clearly contemplated by the Supreme Court cases as barring a retrial even though a mistrial is thereby requested by the defendant.

**8.** The Court of Special Appeals in Tabbs v. State, 43 Md. App. 20, 403 A.2d 796, *cert. denied,* 286 Md. (1979) carefully traced the pedigree of the concept that a grossly negligent error by judge or prosecutor was sufficient to bar a retrial after a mistrial was declared at a defendant's request. It demonstrated the weak foundation on which such a concept rested and described its erosion. 43 Md. App. at 39-44.

The Court of Special Appeals had noticed the concept that gross negligence is a variety of judicial and prosecutorial overreaching in Thompson v. State, 38 Md. App. 499, 381 A.2d 704 (1978), indicated disfavor with it in Loveless v. State, 39 Md. App. 563, 387 A.2d 311 (1978) and Whitfield v. State, 42 Md. App. 107, 400 A.2d 772 (1979), and expressly rejected it in the case at hand, Bell v. State, 41 Md. App. 89, 101, 395 A.2d 1200 (1979), and *Tabbs* at 49. It thought, and we agree, that there is "absolutely nothing at the Supreme Court level remotely suggesting 'gross negligence' as a variety of overreaching, and, indeed, ... every sign from that Court point[s] in the diametrically opposite direction. ..." 43 Md. App. at 39. As we have indicated, it is the Constitution of the United States as construed by the Supreme Court which is now controlling in any event.

**9.** As we have seen, the mistrial was declared solely because of the allegations made by Mason against defense counsel. The failure to disclose

sufficient indication that they were committed by the prosecution with the intention of forcing Mrs. Bell to seek a mistrial or to prevent an acquittal at the trial under way. The trial court expressly did *"not* find that the State's Attorney wanted or *deliberately* sought a mistrial." Although it was satisfied that the matters necessitating the mistrial were the result of prosecutorial error and negligence (gross negligence with respect to failure to disclose the entire plea bargain with Mason), it was "not satisfied that the conduct of the prosecution was motivated by bad faith or was with the deliberate intent of harassing the accused or of seeking a more favorable opportunity to secure a conviction." Our review of the record leads us to the same conclusion.

At the time the mistrial was declared, the State had presented a strong case; there was no reason apparent in the record why it would want the trial aborted, or why it would think it need buttress its case by improper means. The State did not elicit the accusations from Mason on direct examination of him. The court indicated that the prosecutor knew or should have known that Mason would in all probability be cross-examined by the attorney against whom he had made the allegations, and that these circumstances should have made the prosecutor "conclude that there was at the very least a strong possibility that Mason would repeat those allegations in court." But the prosecutor told the court flatly that the fact that Mason testified as to the accusations "was probably as much as a surprise to [him] as it was to anybody else." It may also be, as the court stated, that the prosecutor "knew or should have known" that if the allegations were repeated at the trial, "it would be necessary for defense counsel to refute them under oath,"· and further that defense counsel "knew or should have known" that in such circumstance "this could make it necessary for counsel to withdraw from the case and cause a mistrial." The court thought it was the duty of the prosecutor to caution Mason that his allegations *"even if true,* were collateral and irrelevant to the issues of the trial of Mrs. Bell and should

---

the complete plea bargain arrangement with Mason and the agreement with Anderson did not surface until after the mistrial had been declared.

not be repeated in court." Also, it was the further duty of the prosecutor to make known to the court and to defense counsel the allegations made by Mason "in order that proper steps be taken to attempt to avoid a mistrial, either by a cautionary instruction by the court to Mason, or, if it appeared that Mason would not respect such an instruction, by having additional counsel named for the defense prior to the start of trial." When all the circumstances are considered, however, it does not appear that the failures of duty by the prosecutor were more than negligence. We cannot say that the trial court was clearly wrong in concluding that the prosecutor did not want or deliberately seek a mistrial. Md. Rule 886. Nor does it appear that the failure to perform before trial those duties noted by the court was with the intent to prejudice Mrs. Bell's prospects for an acquittal at the original trial. In the posture of the case, it is patent that it was not that the State feared an acquittal, and engaged in bad faith conduct to prevent it, but that Mrs. Bell anticipated a conviction, and opted for a mistrial rather than go to the jury. Since the circumstances that had developed were not attributable to prosecutorial overreaching within the contemplation of the Supreme Court test, her motion for a mistrial removed any barrier to reprosecution, even though the mistrial was necessitated by prosecutorial error. *Dinitz* at 607.

We hold that a retrial of Mrs. Bell will not violate the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States. Since Bell argues only on the federal constitution, we are not called upon to consider the common law concept of double jeopardy embraced by Maryland. In any event, we find no violation of it. The trial court did not err in denying the motion to dismiss, and the intermediate appellate court was correct in affirming that judgment.[10]

*Judgment affirmed; costs to be paid
by appellant.*

10. In light of our decision, the question presented by the State in its conditional cross-petition for a writ of certiorari, *see, supra,* need not be reached, whether or not the offenses charged in the informations filed after the mistrial were the same as those charged in the indictment.