## GILLIS LEE v. STATE OF MARYLAND

[No. 322, September Term, 1980.]

*Decided December 12, 1980.*

The cause was argued before GILBERT, C. J., and MELVIN and WILNER, JJ.

*Robert S. Sherman,* with whom was *Richard W. Winelander* on the brief, for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William Swisher, State's Attorney for Baltimore City,* and *Barbara Salkin, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

## — THE ISSUE —

This appeal tests the perimeters of the second prong of the rule articulated in *Bell v. State*, 286 Md. 193, 406 A.2d 909 (1979), concerning the "bad faith conduct" of a prosecutor that causes a defendant to move for a mistrial.

## — THE LAW —

Writing for the Court in *Bell,* Judge Orth declared:

"The teaching of the Supreme Court cases is clear. Retrial is not barred as violative of the Double Jeopardy Clause of the Fifth Amendment when a mistrial is declared at the behest or with the consent of the defendant unless such error or misconduct, sufficient to justify the declaration of a mistrial, was committed by either the prosecutor or the court with the intention of (1) forcing the defendant to move for or consent to a mistrial, or (2) prejudicing his prospects for an acquittal if the trial continued to a verdict. It is 'bad-faith conduct by judge or prosecutor' with such intent that prohibits retrials.

The keystone of the test formulated and consistently followed by the Supreme Court is the requirement of 'intent.' And intent is implicit in 'bad-faith.' Thus, the test does not encompass negligence. *See Illinois vs. Sommerville,* 410 U.S. 458, 93 S. Ct. 1066, [35 L.Ed.2d 425] (1973). 'Intentional' and 'negligent' are mutually exclusive. It is true that the greater degree of negligence, the closer the error comes to being intentional. That is, an error by judge or prosecutor which appears to be 'gross negligence' may, of course, provide some evidence of intent. But if what seems to be negligent is so gross as to warrant a determination that the act was in fact intentional, it is not then negligent." (Footnotes omitted.) *Id.* at 204-05, 406 A.2d at 915.

The appellant in the instant case, Gillis Lee, concedes that "the State . . . did not want or seek a mistrial." Hence, we need not and do not concern ourselves with *Bell's* other tine. Instead, we shall focus our attention strictly upon whether the State so acted, in the matter before us, as to prejudice appellant's "prospects for an acquittal if the trial continued to verdict."

*Bell* was never intended to address all situations in which evidence concerning the accused's criminality is offered. Indeed, the purpose of the State's proceeding to trial in the first place is to offer evidence demonstrating beyond a reasonable doubt that the accused did what he did at the time and place alleged by the State.

We make explicit that *Bell* condemns those instances where the prosecutor intentionally forces a defendant into moving for a mistrial or prejudices the defendant's prospects for a fair verdict that is based upon the legally admissible evidence. Judge Moylan, in a concurring opinion in *Jones v. State,* 44 Md. App. 417, 433, 409 A.2d 725, 733 (1979), *aff'd,* 288 Md. 618 (1980), pointed out that when the Supreme Court of the United States and the Court of Appeals of Maryland speak of intentionally forcing the defendant to move for a mistrial, the word "intentional" has a more narrow meaning than a "mere *general intent." Jones* was recently affirmed by the Court of Appeals. *See Jones v. State,* 288 Md. 618, 420 A.2d 1241 (1980).

The general intent to do something, which may at a later time be declared "to be a foul, is almost always present." The use of prejudicial questions on direct or cross-examination "or the introduction of tainted evidence represent[s] conscious and intended actions." What is meant by the *Bell* Court's use of "intentional" is "overreaching," an act that "contemplates a *specific intent* above and beyond the mere general intent." It is the specific intent to commit a foul, the deliberate "hitting below the belt" or the calculated "personal foul" performed with the thought in mind that the foul might well be detected for what it is. By borrowing from the game of football for an analogy, we liken that specific intent to force a mistrial to a defensive back's wilful and

deliberate interference with the offensive team's down field pass receiver. The defense knows that by performing the illegal act that constitutes the foul, he will probably be caught and his team penalized. Nevertheless, the offender prefers to take the penalty rather than give up the touchdown that most likely would occur were the foul not committed. In football, commission of such a foul may be expedient, but in the trial of a case, it is a reprehensible specific intention that triggers the Double Jeopardy Clause protection.

## — THE INSTANT CASE —

During the trial of appellant in the Criminal Court of Baltimore (Bell, J.) on a charge of robbery with a dangerous and deadly weapon, as well as other allied charges, a critical point arose during the testimony of the prosecutrix-victim.

The witness, Paulette Malloy, on direct examination by the Assistant State's Attorney, related that she based her identification of Gillis Lee, as the robber who held up the store in which she worked, on April 30, 1979, on what she saw that day. When asked if she had seen appellant since the April robbery, the witness said that she had seen the appellant in the store at another time, and at that time, the store was also robbed. The answer was not responsive. The "other time, . . . the store was also robbed" was prior to the April 1979 robbery.

The appellant promptly moved for a mistrial, and the same was granted by Judge Bell.

Subsequently, the matter was called to trial before Judge James W. Murphy. Appellant, citing *Bell*, moved to dismiss the indictment on the ground that any trial would be in derogation of appellant's constitutional protection against double jeopardy.

Barbara Salkin, the Assistant State's Attorney at the aborted trial, testified before Judge Murphy that although she knew of Ms. Malloy's knowledge concerning the earlier robbery, she did not furnish that information to appellant's

counsel or to Judge Bell. Her reasons for not doing so were relatively simple. First, she had instructed Ms. Malloy on a number of occasions not to mention the first robbery. Second, the prosecutor knew the evidence, if used, would tend to prove guilt through another uncharged crime.[1] Ms. Salkin categorically denied that she purposely brought about a mistrial. Indeed, inasmuch as Ms. Malloy was the State's first witness, there was apparently nothing to be gained by the State as a result of a mistrial.

Notwithstanding Ms. Salkin's disavowal of any underhanded or ulterior motive in dealing with the examination of Ms. Malloy, nor appellant's inability to point to any advantage the State might have reaped from the mistrial, appellant steadfastly argued that *Bell* dictates that the prosecution may not continue because the Double Jeopardy Clause acts as an insurmountable barrier to the State.

Appellant misconstrues *Bell*. As we noted at the outset, *Bell* is directed towards the purposeful causing, by the State, of a defendant's successful moving for a mistrial so as to afford the State the opportunity to try the defendant anew. "Purposeful," as used in *Bell,* includes within its ambit such gross negligence that, when viewed impartially, amounts to intent. It is "overreaching," irrespective of prosecutorial intent, to the point where the defendant is deprived of a fair trial.

The prosecutor in the case now before us specifically cautioned the witness *not* to refer to the prior robbery. There is nothing within the record from which it can fairly be inferred that the prosecutor sought or wanted a mistrial, nor can it in all fairness be inferred that she endeavored to deprive the appellant of a fair trial. Having admonished the witness not to mention the earlier uncharged robbery, there was little the prosecutor could do to prevent either the "blurt" or the unresponsive answer given by the witness. About the only way of being absolutely certain that the

---

1. Whether the evidence was properly admitted is not an issue in this case. We do not decide it.

witness would not reveal the prior incident would be to keep the witness from the stand. That would be ideal for the defendant because the State would be without its principal witness. *Bell* does not require that drastic action on the part of the State.

Moreover, even if the Assistant State's Attorney had notified the judge and the appellant's counsel of the prior robbery, that knowledge by them would not have prevented the witness from blurting appellant's alleged involvement in the prior robbery. Furthermore, no disclosure by the State to the defense was required inasmuch as the information can hardly be characterized as exculpatory.

Judge Murphy did not err in refusing to dismiss the Criminal Information on the ground that the mistrial placed the defendant in double jeopardy.

> *Order denying motion to dismiss affirmed.*
>
> *Costs to be paid by appellant.*