481 A.2d 505

**John BOOTH a/k/a Marvin Booth a/k/a William Booth**

v.

**STATE of Maryland.**

**No. 62, Sept. Term, 1984.**

Court of Appeals of Maryland.

July 10, 1984.

Opinion Sept. 18, 1984.

**2**

Adrienne E. Volenik, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Deborah K. Chasanow, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

## ORDER

PER CURIAM.

For reasons to be stated in an opinion later to be filed, it is this 10th day of July, 1984

ORDERED, by the Court of Appeals of Maryland, that the order of the Circuit Court for Baltimore City denying the motion to dismiss the indictment be, and it is hereby, affirmed; and it is further

ORDERED that the mandate shall issue forthwith, costs to be paid by the appellant.

COUCH, Judge.

We are here presented with the question whether the Circuit Court for Baltimore City erred in denying appellant John Booth's motion to dismiss indictments against him on federal double jeopardy grounds. By per curiam order dated July 10, 1984, we affirmed the order of the Circuit Court for Baltimore City denying the motion to dismiss. We now give our reasons for that determination.

Booth was charged with two counts of first degree murder, involving the May 18, 1983, deaths of Irvin and Rose Bronstein; two counts of robbery with a deadly weapon; and conspiracy. Certain discovery motions were heard, and the case came on for trial before a jury in April, 1984. After the state completed its case in chief and rested appellant moved for a mistrial, contending certain exculpatory material in the state's possession had been withheld until trial to appellant's prejudice. The trial judge con-

sidered the matter and concluded that since the state had failed to provide the information to the defense, and since this was a death penalty case, he would grant the motion. In doing so, the trial judge stated:

"Well, Mr. Doory [Assistant State's Attorney] and the State, I don't know why you didn't provide the information for Defense Counsel to check it out. It came to your attention and you checked it out and you say you found it was insignificant, but at the same time I think perhaps you did have a duty to allow Defense Counsel to check it out for their satisfaction. It's a very serious case and you've asked—the State is demanding the death penalty for this man if he's convicted. I think under those circumstances the information should have been supplied.

\*　　\*　　\*　　\*　　\*　　\*

Well, I'm going to grant the mistrial."

Within a few days thereafter appellant moved to dismiss the indictments alleging that a second trial would violate his double jeopardy right guaranteed by the Fifth Amendment to the United States Constitution. Appellant claimed he was "goaded" into seeking a mistrial of the earlier trial. A hearing was held on this motion. Testimony was taken to explain why certain material was not turned over to appellant. The trial judge thereafter denied appellant's motion, stating:

"I find there was really no attempt on the part of the State to goad the Defendant and ask for a mistrial. They were quite dismayed that I granted the Motion for a Mistrial. The reason I granted it was because the statement of Mr. Cohen was checked by the State. It bothered them somewhat and they said they found it was insignificant. Here we have a capital case and I think that the Defendant had a right to have his own Counsel check it out. I think they made a mistake, but I think it was not a malicious mistake. I think it was an honest mistake. I don't find any prosecutorial misconduct on

their action. Your Motion to Dismiss on the grounds of double jeopardy will be denied."

An appeal from the denial was taken. We issued the writ of certiorari before consideration of the case by the Court of Special Appeals.

As noted above, the appellant bases his argument on federal constitutional grounds, and well he might. In *Cornish v. State*, 272 Md. 312, 316, 322 A.2d 880, 883 (1974), Judge Eldridge, speaking for the Court, observed in footnote 2:

"Prior to the decision in *Benton v. Maryland, supra,* [395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)] the double jeopardy prohibition was applicable to Maryland prosecutions only as a common law principle. The view in this state was that, under the common law's double jeopardy prohibition, jeopardy did not attach until the rendition of a verdict and that, therefore, a retrial following the declaration of a mistrial did not give rise to a double jeopardy problem. *Kyle v. State*, 6 Md.App. 159, 250 A.2d 314 (1969)." *See also Ward v. State*, 290 Md. 76 at 85–86, 89–91, 427 A.2d 1008 (1981).

Of course in *Benton, supra,* the United States Supreme Court, for the first time, held that the double jeopardy prohibition of the Fifth Amendment should apply to the states through the Fourteenth Amendment.

■ The general rule applicable to an issue such as is present here is that a retrial is not normally barred by the prohibition against double jeopardy where the defendant sought or consented to the mistrial. *Cornish, supra; Bell v. State*, 286 Md. 193, 406 A.2d 909 (1979). See also Judge Moylan's thorough discussion of this issue in *West v. State*, 52 Md.App. 624, 451 A.2d 1228 (1982). Nevertheless, a well recognized exception to the general rule arises where there is judicial or prosecutorial overreaching.

In 1982, the United States Supreme Court definitively set forth the standard to be followed when deciding the issue raised here. Justice Rehnquist, speaking for the Court in

*Oregon v. Kennedy,* 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416, 427 (1982), stated:

"We do not by this opinion lay down a flat rule that where a defendant in a criminal trial successfully moves for a mistrial, he may not thereafter invoke the bar of double jeopardy against a second trial. But we do hold that the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial."

This exception was recognized earlier by this Court in *Bell, supra,* where Judge Orth wrote for the Court:

"The teaching of the Supreme Court cases is clear. Retrial is not barred as violative of the Double Jeopardy Clause of the Fifth Amendment when a mistrial is declared at the behest or with the consent of the defendant unless such error or misconduct, sufficient to justify the declaration of a mistrial, was committed by either the prosecutor or the court with the intention of (1) forcing the defendant to move for or consent to a mistrial, or (2) prejudicing his prospects for an acquittal if the trial continued to a verdict. It is 'bad faith conduct by judge or prosecutor' with such intent that prohibits retrials. [Footnote omitted].

The keystone of the test formulated and consistently followed by the Supreme Court is the requirement of 'intent.' And intent is implicit in 'bad faith.' Thus, the test does not encompass negligence. *See Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066 [35 L.Ed.2d 425] (1973). 'Intentional' and 'negligent' are mutually exclusive. It is true that the greater degree of negligence, the closer the error comes to being intentional. That is, an error by judge or prosecutor which appears to be 'gross negligence' may, of course, provide some evidence of intent. But if what seems to be negligent is so gross as

to warrant a determination that the act was in fact intentional, it is not then negligent." [Footnote omitted]. *Bell*, 286 Md. at 204–05, 406 A.2d at 915.

■ Viewing the facts of the instant case, using this standard, leads to one conclusion: the trial judge found, and we agree, that there was no attempt on the part of the state to goad appellant to seek a mistrial. The trial judge felt that a mistake was made; however, it was not a malicious mistake, but an honest one. Moreover,. the trial judge found no prosecutorial misconduct on the state's part. From our review of the record we agree with these findings.

Preliminarily, we make clear that we are not here concerned with the propriety of the trial judge's granting of the mistrial; our concern is limited to a consideration of his ruling on appellant's motion to dismiss on jeopardy grounds. If the circumstances support the trial judge's determination that there was no prosecutorial misconduct, then his action was correct as the case would not fit into the above referred to exception to the general rule.

Appellant argues that there was prosecutorial misconduct present because of two matters; one, a statement of a neighbor, Mr. Cohen, which appellant claims demonstrates that Mr. Cohen saw the Bronsteins the day after the claimed date of death. Secondly, appellant contends that the grand jury testimony of Charles Westry shows he testified that he had overheard Daryl Brooks admit he stabbed Mr. Bronstein. The transcript of this grand jury testimony was turned over to the trial judge, but was not given to appellant until after the mistrial had been declared. Under these circumstances, the issue of Westry's grand jury testimony, not being involved with the granting of the earlier mistrial is simply not relevant to the question of error in not granting the later motion to dismiss.

As regards the Cohen statement, the prosecutor did not turn it over to appellant since it was not considered exculpatory. This was so, according to the state, because in typing

the question and answer statement taken of Mr. Cohen, but written by the police officer, a period was added, in the typed version of Mr. Cohen's answer, following the question "Did you see Mr. Bronstein again? and if where or when?" The answer as typed read:

"About 10:30 A M on Thursday 19th 1983. My son and I were leaving my home and I observed a bright red truck open bed pick up with a hitch and a bright red flat-bed two wheel trailer behind the truck both the truck and trailer were loaded with the trimmings of the work done."

As noted above, the trial judge believed that the statement should have been turned over to appellant but it was not because the prosecutor had made an honest mistake. In our view there was a mistake, but one caused by the unwarranted addition of punctuation in the typed statement after "Thursday 19th 1983" and not by prosecutorial over-reaching or misconduct. There simply was nothing before the trial judge to refute his conclusion of no prosecutorial misconduct.

The state also suggests that the alleged prosecutorial misconduct that prompted the mistrial motion occurred prior to trial, before any intent to cause a mistrial could possibly have been found. Therefore, the exception to the general rule, in any event, should not apply, relying on *United States v. Gonzalez,* 719 F.2d 1516, 1519 (11th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1312, 79 L.Ed.2d 710 (1984) (negligent failure to disclose defendant's arrest record prior to trial), and *Lozano v. State,* 658 S.W.2d 201, 202 (Tex.App.1983) (failure to disclose pretrial fact that complaining witness identified someone other than defendant in photo lineup).

Logically, it would seem that prosecutorial conduct occurring pretrial could rarely form the basis for applying the exception to the general rule since the prosecutor would hardly intend to abort a trial before it has even started. In *Gonzalez,* the Court stated:

8

"It is another matter, however, to urge that such conduct, occurring prior to the selection of the jury in the first trial, was intentionally designed to abort the trial before that jury. There was no indication that the trial was going poorly for the government; the prosecutor therefore had no reason to prompt a mistrial. . . ."

In short, applying the principle of *Oregon v. Kennedy,* we see no action by the state which in any sense could be viewed as an intention to goad the appellant into seeking a mistrial or that the state was seeking to abort the trial; thus, we hold there was no error in the trial court's denial of appellant's motion to dismiss.